Pittsburgh Outdoor Advertising Corporation Appeal.
Urban Redevelopment Authority of Pittsburgh Appeal.

322

Argued October 3, 1969. Before BELL, C. J., COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

reargument refused November 23, 1970.

*Frank W. Ittel*, with him *Blair S. McMillin*, and *Reed, Smith, Shaw & McClay*, for condemnee.

*Richard W. Kelly*, with him *Richards & Kelly*, for condemnor.

OPINION BY MR. JUSTICE POMEROY, October 9, 1970:

In this case the Urban Redevelopment Authority of Pittsburgh (the Authority) condemned two leasehold interests of Pittsburgh Outdoor Advertising Corporation (Outdoor) in a building, the fee of which had already been acquired by the Authority by purchase from the owner. The problem presented on this appeal is the proper method of valuing these leasehold interests, that is, Outdoor's right to remain in undisturbed possession of the premises for the remainder of the term of the lease. It is the loss of this right for which compensation is payable to the condemnee.[1]

Each lease was for a term of five years commencing July 1, 1965 and ending on July 1, 1970. One lease provided for the leasing of a portion of the roof of the building to Outdoor for the erection of four billboards 12' x 25' in size, for an annual rental of $250. The other lease provided for the leasing of a portion of the west wall of the building to Outdoor for the erection of one billboard of the same size for an annual rental of $50. At the time of condemnation the leases had some 3 years and 7 months to run.

---

[1]Outdoor as lessee also has a right to receive compensation for the loss of its improvements of the leasehold, viz., the billboards which it has erected and which it employs in its advertising business. Specifically, under Section 608 of the Eminent Domain Code, Act of June 22, 1964, Spec. Sess., P. L. 84, as amended, 26 P.S. §1-608, a tenant having under its lease the right to remove any fixtures which (as the billboards here) do not constitute part of the realty is entitled, as damages, to the reasonable expenses incurred by it in the removal, transportation and re-installation thereof or the value in place of a fixture if it cannot be moved without substantially destroying its value, limited by the market value of the fixture. Here the court below properly admitted evidence of reproduction cost less depreciation to establish market value of the billboards. See *Hoffman v. Commonwealth*, 422 Pa. 144, 151, 221 A. 2d 315 (1966). This aspect of the proceeding in the lower court is not in dispute.

After a hearing following the condemnation the Board of Viewers awarded $12,000 to Outdoor. Both sides appealed from the Viewers' award and, by consent of both parties, the case was tried non-jury by the court below. That court rendered an award in favor of Outdoor in the amount of $16,800. Both parties excepted to the award, the court *en banc* adopted the opinion of the trial court and dismissed the exceptions, and judgment was entered for Outdoor in accordance with the trial court's award; both parties have appealed.

The evidence showed that Outdoor realized considerable income from the placement of advertising on its billboards which it had erected on the leased premises, and there was opinion evidence as to whether this income should properly be considered, in whole or in part, as "rent" received by Outdoor from its customers, or as income from the business conducted by Outdoor. Under Section 705(2)(iii) of the Eminent Domain Code, Act of June 22, 1964, Spec. Sess., P. L. 84, 26 P.S. 1-705, expert valuation testimony may include capitalization of net rental value or reasonable net rental value of the condemned property, but not capitalization of the income or profits attributable to any business conducted on the property. The principal dispute in this case has centered on the proper differentiation of these factors as applied to the facts of this case. The learned court below, while correctly concluding that the income from Outdoor's advertising customers should not be considered as rent, nevertheless was of the opinion that it was a legitimate factor to be considered in arriving at the fair market value of the leasehold, and therefore refused to strike Outdoor's testimony relative to income. In this respect the court was in error.

The problem of rental versus business income of a lessor of condemned property as it relates to the permissible scope of expert testimony under the Code is important and relevant in the valuation of a condemned

*freehold* which is subject to lease, but not to the valuation of a condemned *leasehold*. The law of Pennsylvania has long been that the value of a condemned leasehold interest is the difference between the fair rental value of the leased premises and the rent actually reserved in the lease. *Getz v. Philadelphia & Reading Railroad Company,* 105 Pa. 547 (1884); Snitzer, *Pennsylvania Eminent Domain,* §201(2)-9. Put another way, if the fair rental value of the premises at the time of the taking is greater than the rent being paid under the terms of the lease, this difference, projected over the life of the lease and discounted to present worth, represents the value of what has been taken. This "fair market value" test has remained the law, and has not been altered by the Eminent Domain Code. Snitzer, loc. cit.; *Profit-Sharing Blue Stamp Company v. Urban Redevelopment Authority,* 429 Pa. 396, 399-400, 241 A. 2d 116 (1968).

In the instant case, as indicated above, the leasehold interests pertained to the roof of a building and to one exterior wall of the building. Both Outdoor's expert and the Authority's expert testified that the combined fair rental value of both leaseholds was only $300 a year, which was the exact amount of rent being paid by Outdoor. Thus, these leases had no "bonus" value and the lessee was not damaged by their condemnation. *Profit-Sharing Blue Stamp Company v. Urban Redevelopment Authority, supra.*

In this view of the case, the testimony of Outdoor's witnesses as to the so-called "income flow" running to it from its use of the leased premises was irrelevant and improperly admitted into evidence, regardless of whether it be considered "rent" of billboard space or income from the business conducted by Outdoor. Any portion of this income attributable to the location of the signs, as distinguished from the services Outdoor rendered to its customers, should properly be reflected

in the fair rental value of the premises. Thus, at least in theory and hopefully in practice, Outdoor could obtain a lease of a comparable location for the same amount of rent, construct its billboards at that location with the award for the replacement value of the billboards and realize an identical income flow. Other than the loss of the billboards themselves, Outdoor has not been legally damaged by this taking. Because the opinion of the court below indicates that the amount of its order and judgment was based at least in part on the testimony as to income,[2] the judgment must be vacated and the case remanded for a redetermination of the amount of the award in light of the above principles.

Two other matters raised by Outdoor's appeal require brief consideration. The first is its contention that the possibility that a lease may be renewed is a proper factor for consideration by a valuation expert in appraising the value of the condemned leasehold. The leases here were for a term certain and contained no renewal options. The fact that there is a long history of occupancy by Outdoor of the space here involved is no sure indicator of renewal. As the court below observed, "[w]hether or not the lease would have been renewed for another term is sheer speculation and damages cannot be determined by speculation". Cf. *Shaaber v. Reading City*, 150 Pa. 402, 408 (1892).

The remaining argument pressed by Outdoor is the incompetency of the testimony of the Authority's valuation expert. This is premised on the witness' reliance on the written appraisal report of a qualified engineering firm in determining the value of the billboards based on reproduction cost less depreciation. No copy of the report had been furnished to Outdoor, and no

---

[2] The award was $16,800; the values placed upon the billboards by the witnesses ranged from $12,000 to $13,900.

representative of the engineering firm was called as a witness.

The use by a testifying valuation expert of facts and figures derived from others and of which he himself does not have personal knowledge occurs frequently and is not a new development. To require direct personal knowledge by the expert witness of every element going to make up an appraisal figure would be to require the impossible. That there may thus be some hearsay evidence comprised within opinion evidence is undeniable. The components of an expert's opinion, however, go to weight, not admissibility. Prior to the Eminent Domain Code, such components could be inquired into only on cross-examination, and then to a restricted extent. *McSorley v. Avalon Borough School District,* 291 Pa. 252, 139 Atl. 848 (1927). The Code now provides, Section 705(1), 26 P.S. §1-705(1), that "A qualified valuation expert may, on direct or cross-examination, state any or all facts and data which he considered in arriving at his opinion, *whether or not he has personal knowledge thereof,* and his statement of such facts and data and the sources of his information shall be subject to impeachment and rebuttal."[3] (Emphasis supplied.) In Snitzer, *Pennsylvania Eminent Domain,* pp. 389-390, the author comments on the phrase "whether or not he [the valuation expert] has personal knowledge thereof" as it applies to reproduc-

[3]The comments of the Joint State Government Commission to this subdivision state in part: "The primary purpose and intent of this clause . . . is to change and broaden existing law which unduly limits the examination and cross-examination of an expert witness, so as to permit the expert witness to testify on direct, as well as cross-examination, to any and all matters which he considered (not necessarily 'relied on') in arriving at his opinion of damages. Under existing law . . . the expert is unduly limited as to what he may testify to, and as a consequence, he cannot show his competence or what perhaps is more important, his lack of competence. . . ."

tion costs of improvement upon land: "If the appraiser considers this factor [reproduction cost], he would rarely independently verify the cost estimates published by builders, government agencies, insurance companies or other qualified persons professionally concerned with such data.

"This language [of Section 705(1)] eliminates the necessity for the expert to have personal knowledge of the technical elements utilized in arriving at his expert opinion. The section only enables the appraisal expert to do what other experts do: Base an opinion on technical factors, with the weight of the testimony left to the fact-finding body." We consider this approach eminently reasonable and in line with the Eminent Domain Code's obvious effort to take cognizance of all modern appraisal methods.

Judgment vacated and case remanded for further proceedings in conformity with this opinion.

Mr. Justice JONES took no part in the consideration or decision of this case.