In Re: Condemnation by the Commonwealth of Pennsylvania, Department of Transportation, etc. Graham Realty Company et al. *v.* Commonwealth of Pennsylvania, Department of Transportation. Graham Realty Company, Appellant.

Argued May 5, 1982, before President Judge CRUMLISH and Judges WILLIAMS, JR. and MACPHAIL, sitting as a panel of three.

*Guy L. Warman,* with him *John Michael Studeny, Guy L. Warman and Associates, P.C.,* for appellant.

*Benjamin B. Wechsler, II,* Assistant Counsel, with him *Michael J. Creighton,* Assistant Counsel in Charge, *Ward T. Williams,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for appellee, Commonwealth of Pennsylvania.

*Thomas J. Dempsey,* for appellee, Bell Federal Savings and Loan Association.

OPINION BY JUDGE MACPHAIL, July 8, 1982:

In this eminent domain appeal Graham Realty Company (Appellant) challenges an order of the Court of Common Pleas of Allegheny County denying Appellant's motions for judgment n.o.v. and a new trial. We affirm.

Appellant, at all times relevant to the instant appeal, has owned a tract of land which has a frontage on McKnight Road in Allegheny County of approximately 430 feet. The property is divided into and leased as four contiguous parcels, each of which is improved with a building used for commercial purposes. One of the parcels is leased to Bell Federal Savings and Loan Association (Appellee).

On April 2, 1974 the Department of Transportation (DOT) condemned a five foot strip of Appellant's land along McKnight Road in connection with a DOT project to widen the road. Appellant subsequently filed a petition for the appointment of viewers which, as amended, alleged its interest in the property as owner and provided a list of its tenants. Following a hearing at which interested parties offered evidence, the viewers awarded $32,700 to Appellant. No award was made to Appellee. Appellant and Appellee both appealed the award to the trial court. The case was then tried before a jury which rendered a verdict apportioning total general damages of $35,350 to Appellant in the amount of $27,930 and to Appellee in the amount of $7,420.[1] Following the denial of its post-trial motions, Appellant perfected its appeal to this Court. There is no complaint as to the total damages awarded; the instant appeal relates only to the apportionment thereof.

Two issues have been presented to us: 1) whether the lease agreement between Appellant and Appellee bars recovery of condemnation damages by Appellee and 2) whether portions of the trial court's charge to the jury constitute reversible error.

Appellant and Appellee entered into a lease agreement commencing on May 1, 1973 for a period of thirty years. The lease contains a condemnation clause which provides as follows:

> In the event of condemnation by a public body of the entire premises or a substantial part thereof . . . either party may, at its option, by

---

[1] Appellee's expert testified that the portion of the real estate taken by DOT represented 28½% of Appellee's available parking space. Considering this loss and the cost of relandscaping, repaving and realignment of the parking area, the expert opined that Appellee's damages were $33,000.

thirty (30) days notice in writing given to the other party, declare this lease cancelled. . . . In the event of condemnation by a public body of less than a substantial part of the premises, this lease shall not be affected, and neither party shall have the right to cancel. *All damages recoverable by reason of any such taking, with the exception of damages permitted tenants by law other than bonus value, shall be payable solely to Lessor.* (Emphasis added.)

Thus, in order for damages to be payable to Appellee, the lease agreement requires that the damages be "permitted tenants by law" and that they be other than "bonus value" damages. Appellant insists that the only damages permitted by law to tenants under the Eminent Domain Code (Code)[2] are dislocation damages, damages to fixtures and bonus damages. Since there is no claim by Appellee for dislocation damages or damages to fixtures and since the lease agreement provides that "bonus value" damages are payable to the lessor, Appellant logically concludes that Appellee is entitled to no damages.

The parties agree that the taking in this case was of less than a substantial part of the premises and that the rent obligation in the lease remained unaffected by the condemnation.

A leasehold interest, of course, is a property interest and consequently may not be condemned for a public use without just compensation. *Hawk Sales Co., Inc. v. Department of Transportation,* 38 Pa. Commonwealth Ct. 535, 394 A.2d 657 (1978). A tenant, therefore, is a condemnee within the meaning of Section 201(2) of the Code, 26 P.S. §1-201(2) when its leasehold interest is taken, injured or destroyed and, under

[2] Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§1-101-1-903.

the provisions of the Code, is entitled to just compensation. Section 602(a) of the Code, 26 P.S. §1-602(a) provides that:

> Just compensation shall consist of the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected thereby and the fair market value of his property interest remaining immediately after such condemnation and as affected thereby, and such other damages as are provided in this code.

Recent cases which have dealt with the *total* taking of leasehold interests have held that "bonus value" damages constitute just compensation for a condemned leasehold interest. *See Pittsburgh Outdoor Advertising Corp. Appeal,* 440 Pa. 321, 272 A.2d 163 (1970) and *Profit-Sharing Blue Stamp Co. v. Urban Redevelopment Authority,* 429 Pa. 396, 241 A.2d 116 (1968). The "bonus value" of a lease is "the difference between the fair rental value of the leased premises and the rent actually reserved in the lease." *Pittsburgh Outdoor Advertising Corp.,* 440 Pa. at 325, 272 A.2d at 165. Thus, if the fair rental value at the time of the taking is greater than the rent being paid by the lessee, then the lessee is receiving a "bonus" under the terms of his lease. This "bonus", projected over the remaining term of the lease and discounted to its present worth, constitutes the damages which the lessee is entitled to recover. Here, Appellant argues that the condemnation provision in the lease, in particular the final sentence thereof, bars recovery of damages by Appellee since the damages sought by Appellee constitute "bonus value" damages which are payable, according to the lease, solely to Appellant. Appellee contends, on the other hand, that it is not seeking "bonus value" damages. Instead Appellee contends that it is entitled to damages for the dimin-

ished fair rental value of the leased premises which resulted from DOT's *partial* taking.

It is true that any bonus value which might exist as a result of a condemnation is payable to the lessor (Appellant) in accordance with the terms of the lease. It is also true, however, that Appellee has not refuted Appellant's evidence that the fair rental value at the time of the partial taking of the premises leased to Appellee, *equaled* the rent being paid. Thus, there is no bonus value as a result of DOT's condemnation.

We agree with Appellee, however, that it is nevertheless entitled to recover damages reflecting the diminished fair rental value of the leased premises after the *partial* taking. We believe that the damages sought are in the nature of general damages calculated according to Section 602(a) of the Code, 26 P.S. §1-602(a). Appellee's right to damages is supported by the reasoning of our Supreme Court in a 1916 case which we think is equally applicable here:

> [O]ne always may show that, by reason of the public improvement, the rental value of the demised premises has suffered a lasting depreciation which, owing to the fact that the actual rent to be paid must remain as theretofore, necessarily would affect the market value of his leasehold. . . . In other words, one may show that, under the requirements of his contract, he is obliged to pay the same rent as before the improvement, whereas, as a matter of fact, if he were about to take a new lease, according to the reduced rental values caused by the improvement, in all probability, he would secure it at a certain lower rental; hence because his lease calls for, relevantly speaking, too high a rent, the market, or selling value of the balance of his term is depreciated accordingly.

*Iron City Automobile Co. v. Pittsburgh,* 253 Pa. 478, 495-96, 98 A. 679, 685 (1916) (citation omitted). Stated more concisely: "When . . . the entire [leasehold] interest is not destroyed, [the lessee is entitled to recover] the difference between the value of the lease before and after the taking. . . ." 13 P.L.E. *Eminent Domain* §61 (1959).

Applying this reasoning and Section 602(a) of the Code to the present case, we conclude that Appellee is entitled to recover, as just compensation for its loss, the difference between the fair market value of its leasehold interest immediately before the partial taking and the fair market value of the leasehold interest remaining immediately after the taking, projected over the remaining term of its lease and discounted to its present worth. The fair market value of the lease is the amount a willing and fully informed buyer would pay for the leasehold interest, and the sum for which a willing and fully informed seller would sell the leasehold interest. *Profit-Sharing Blue Stamp Co.,* 429 Pa. at 399, 241 A.2d at 118. Moreover, the damages to which Appellee is entitled are not "bonus value" damages and therefore are payable to Appellee under the terms of its lease agreement with Appellant. We, accordingly, conclude that the lease agreement here does not bar recovery of the damages awarded to Appellee.[3]

We are aware that this result may seem to be in conflict with the language of our Supreme Court in *Profit-Sharing Blue Stamp Co.,* 429 Pa. at 400, 241 A.2d at 118, where it approved a trial judge's charge

---

[3] We also conclude that the testimony by Appellee's expert witness with regard to the costs of relandscaping and repaving work as an element of damages was proper under Section 705(2)(v) of the Code, 26 P.S. §1-705(2)(v) insofar as it affected fair rental value. Moreover, Appellant failed to specifically object at the time of trial to the testimony on repaving and relandscaping costs, and thus, its objection has been waived.

to the jury which was that " 'if there was no bonus value, then the lessee has not been damaged' ". We emphasize, however, that there was a total taking in *Profit-Sharing Blue Stamp Co.* where "bonus value" damages would be the only damages the lessee *could* claim under Section 602(a) of the Code. In a *partial* taking where the rent remains undiminished but the property interest *is* diminished, we believe a different standard of damages must be applied. We are supported in this conclusion by cases in other jurisdictions which, when confronted with the same problem, have reached the same result as have we. *City of Pasadena v. Porter*, 201 Cal. 381, 257 P. 526 (1927) and *Gluck v. Mayor & City Council of Baltimore*, 81 Md. 315, 32 A. 515 (1895).

The second issue presented to us concerns portions of the trial court's jury charge. The challenged portions are as follows:

> If you find that the fair market rental of the Bell Federal premises was reduced by reason of the taking of property for highway purposes, then you should award to Bell Federal Savings and Loan Association the amount by which the fair market rental was reduced, projected toward the balance of the lease period but reduced to its present worth.
>
> . . . .
>
> Also, you, the members of the jury, should first fix the total damages for the property, and second, apportion that amount between Graham Realty and Bell Federal Savings and Loan. The damages testified to by Bell Federal are a part of and not in addition to the damages to the property as a whole.

The first quoted portion of the charge accurately states the law regarding Appellee's entitlement to damages and is, therefore, not in error. We also find

no error with the trial court's charge on apportionment of damages. Section 507 of the Code, 26 P.S. §1-507, provides that the claims of owners and tenants shall be tried together and that the verdict "shall first fix the total amount of damages for the property, and second, apportion the total amount of damages between ... the ... claimants entitled thereto." We have found nothing in the charge to support Appellant's contention that the trial court directed or instructed the jury to enter a verdict in favor of Appellee.

Having found no abuse of discretion or errors of law[4] we will affirm the order of the trial court.

### ORDER

It is ordered that the order of the Court of Common Pleas of Allegheny County, dated May 5, 1981, No. 1790 January Term, 1975, is hereby affirmed.

---

[4] Our scope of review of trial court decisions in eminent domain cases is limited to a determination of whether the court abused its discretion or committed any errors of law. *Hawk Sales Co., Inc.*