In re CONDEMNATION BY the COM-MONWEALTH of Pennsylvania, DE-PARTMENT OF TRANSPORTATION, OF RIGHT OF WAY FOR STATE ROUTE 0060, SECTION A01, and State Route 6060, Section 001, Limited Access Highways in the Township of Findlay and Moon.

Appeal of PATRICK MEDIA GROUP, INC., Appellant.

Commonwealth Court of Pennsylvania.

Argued June 10, 1998.

Decided Aug. 5, 1998.

Publication Ordered Nov. 12, 1998.

Samuel P. Kamin, Pittsburgh, for appellant.

Jeffrey L. Giltenboth, Pittsburgh, for appellee.

Before COLINS, President Judge, and DOYLE, McGINLEY, PELLEGRINI, KELLEY, FLAHERTY and LEADBETTER, JJ.

KELLEY, Judge.

Patrick Media Group, Inc. (Patrick Media)[1] appeals from a non-jury verdict issued by the Court of Common Pleas of Allegheny County (trial court) in its favor in the amount of $34,698. We affirm.

On March 27, 1990, the Commonwealth of Pennsylvania, Department of Transportation (Commonwealth) filed a declaration of taking for a portion of property located on Route 60 in the townships of Findlay and Moon in Allegheny County. At the time of condemnation, Patrick Media leased a portion of the condemned property improved by two billboards. The lease was a fifty-year lease with options to renew.

Patrick Media filed a petition for the appointment of viewers to ascertain just compensation for the condemnation, acquisition and taking of its leasehold interest, which was granted by the trial court. The board of viewers viewed the condemned property and conducted a hearing to determine the amount of damages sustained by Patrick Media. Upon the conclusion of the hearing, the board of viewers issued its report awarding damages to Patrick Media in the amount of $57,000. Both Patrick Media and the Commonwealth appealed the matter to the trial court.

■ The parties agreed to proceed before the trial court by means of stipulated testimony and submitted evidence. The sole issue before the trial court was the just compensation for the taking of Patrick Media's leasehold interest as improved.[2] Patrick Media averred that the billboards were realty and should be valued based upon a "sales comparison approach," while the Commonwealth urged a valuation based upon reproduction cost less depreciation (reproduction approach) on the premise that the billboards were personalty. After the submission of all the evidence, the trial court determined that the billboards were personalty, not realty, and awarded Patrick Media $34,698 as just compensation for the taking as calculated under the reproduction approach method. Patrick Media appeals.[3]

On appeal, Patrick Media raises the following issues for our review:

1. Whether the trial court's award failed to justly compensate Patrick Media for the condemnation of its leasehold as improved?

2. Whether the trial court erred by its failure to consider whether the condemned billboards could be relocated?

3. Whether the trial court erred in failing to fully compensate Patrick Media for its condemned property interest?

Patrick Media contends that the trial court's valuation of the billboards under the reproduction approach fails to justly compensate Patrick Media for the condemnation of its improved leasehold. We disagree.

■ A condemnee is entitled to just compensation for the taking, injury or destruction of this property. Section 601 of the

---

1. Patrick Media is now known as Martin Media.

2. The underlying claim involving the fee owner of the property was settled separately by the Commonwealth.

3. Our scope of review on appeal is limited to whether the trial court abused its discretion or committed an error of law, or whether the findings of fact are supported by substantial evidence. *Harford Township v. Bandurick*, 660 A.2d 189 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 542 Pa. 650, 666 A.2d 1058 (1995).

Eminent Domain Code (Code),[4] 26 P.S. § 1–601. A leasehold interest is considered a property interest for purposes of eminent domain. *Graham Realty Company Appeal,* 67 Pa.Cmwlth. 318, 447 A.2d 342 (Pa.Cmwlth. 1982). Just compensation is defined as

> [T]he difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected thereby and the fair market value of his property interest remaining immediately after such condemnation and as affected thereby, and such other damages as are provided in this code.

Section 602(a) of the Code, 26 P.S. § 1–602(a).

■ Where a leasehold interest has been taken, just compensation is the difference between the fair rental value of the leased premises and the rent actually reserved in the lease. *Pittsburgh Outdoor Advertising Corporation Appeal,* 440 Pa. 321, 272 A.2d 163 (1970); *Getz v. Philadelphia & Reading Railroad Company,* 105 Pa. 547 (1884); *Millcreek Township v. N.E.A. Cross Company,* 152 Pa.Cmwlth. 576, 620 A.2d 558, *petition for allowance of appeal denied,* 537 Pa. 655, 644 A.2d 739 (1994). The value of this differential is typically referred to as the "bonus value" of the lease because if the fair rental value[5] at the time of the taking is greater than the rent being paid by the lessee, the lessee is receiving a *bonus* under the terms of the lease. *Graham Realty.* This bonus, projected over the remaining term of the lease and discounted to its present worth, constitutes damages which the lessee is entitled to recover. *Id.* In other words, the measure of damages is the amount that anyone would pay for the unexpired term over and above the rent and other charges fixed in the contract of the lease. While the measure of "bonus value" may not justly compensate a condemnee where only a partial taking is involved,[6] this approach is the method of valuation where an *entire* leasehold interest has been condemned. *Pittsburgh Outdoor, Profit–Sharing Blue Stamp Company v. Urban Redevelopment Authority,* 429 Pa. 396, 241 A.2d 116 (1968).

■ Additionally, a condemnee may be entitled to compensation for reasonable expenses incurred by the removal, transportation and reinstallation of personal property *or its value* if such personal property cannot be moved without substantially destroying its value, whether because of the unavailability of a comparable site for relocation or otherwise. Section 601A of the Code.[7] Damages for personal property are "not to exceed the greater of (i) the reasonable expenses which would have been required to relocate such personal property, or (ii) the value in place of such personal property." Section 1–601A(b)(1) of the Code.

■ "Personal property" is defined as "any tangible property not considered to be real property for purposes of general damages under the laws of the Commonwealth." Section 201 of the Code, 26 P.S. § 1–201. In Pennsylvania, property is divided into three categories. *See Clayton v. Lienhard,* 312 Pa. 433, 167 A. 321(1933). First, items "which are manifestly furniture, as distinguished from improvements, and not particularly fit-

---

4. Act of June 22, 1964, Special Session, P.L. 84, *as amended,* 26 P.S. §§ 1–101 – 1–903.

5. The fair rental value of the leased premises is the amount a willing and fully informed buyer would pay for the leasehold interest and the sum for which a willing and fully informed seller would sell the leasehold interest. *See Graham Realty.*

6. In *Graham Realty,* only a portion of the condemnee's leasehold interest was condemned. In calculating the condemnee's just compensation, the court determined that a condemnee of a leasehold interest partially condemned is entitled to the fair market value of its leasehold interest immediately before the partial taking and the fair market value of the leasehold remaining immedi-

ately after the taking, projected over the remaining term of its lease and discounted to its present worth. *Id.* The practical difference in a partial taking is that this calculation compensates a condemnee for any "decreased value" in his leasehold interest following the taking. In other words, if the tenant's obligation to pay rent survives the taking in eminent domain, but the fair rental value of the property is less than the rent actually being paid, the tenant must be compensated for this difference projected over the remaining term of the lease.

7. *Added by* the act of December 29, 1971, P.L. 640, *as amended,* 26 P.S. § 1–601A.

ted to the property with which they are used ... always remain personalty." *Id.* at 436, 167 A. at 322. Second, items which are annexed to the property in a manner that prevents their removal "without material injury to the real estate or to themselves" are realty. *Id.* Third, items that are physically connected to the property but which can be removed without causing destruction or material injury to the chattels or the property can be either personalty or realty, "depending on the intention of the parties at the time of the annexation." *Id.*

■ Whether the items do, or do not form part of the real estate is significant because of the differences in the measure of damages. *Compare* section 603 of the Code with section 607 of the Code, 26 P.S. § 1–607, and section 601A of the Code. Machinery, equipment and fixtures forming part of the real estate must be taken into consideration in determining the fair market value of the condemned leasehold. *Department of Transportation v. Becker*, 118 Pa.Cmwlth. 620, 546 A.2d 1282 (1988). However, items deemed not to form part of the realty would be valued, separately, on the basis of their fair market value as severed from the real estate. *See* section 607 of the Code; section 601A of the Code; section 1–705(2)(iv) of the Code; 26 P.S. § 705(2)(iv). The reproduction approach is the traditional method for calculating the value of personal property. *See* section 705(2)(iv) of the Code.

In *Pittsburgh Outdoor*, the Urban Redevelopment Authority of Pittsburgh condemned two leasehold interests belonging to an outdoor advertising corporation. In valuing the just compensation payable to the condemnee, the Pennsylvania Supreme Court determined that a billboard lease is no different than any other lease for condemnation purposes. Although the condemnee therein presented evidence relating to "income flow" of the billboards as a separate item of damages, the Court found this evidence to be irrelevant explaining that *any income attributable to the location of the signs, as distinguished from the services rendered, should*

*be properly reflected in the fair rental value of the premises.* Since the fair rental value of the lease was equal to the amount of rent being paid, the condemnee was not entitled to any "bonus value." However, the condemnee was entitled to separate compensation for the loss of the billboards themselves as the billboards were found to be removable "fixtures" which did not constitute part of the realty. The Court indicated that the trial court's valuation of the billboards under the reproduction approach was proper. The Court rationalized that "at least in theory and hopefully in practice, [the condemnee] could obtain a lease of a comparable location for the same amount of rent, construct its billboards at that location with the award for the replacement value of the billboards and realize an identical income flow." *Id.* at 325, 272 A.2d at 165.

Here, Patrick Media's entire leasehold interest was condemned by the Commonwealth. As a result, Patrick Media was entitled to recover all damages incurred as a result of the taking, including any bonus value for its leasehold. Patrick Media, however, made no claim for bonus value. Thus, the trial court focused its determination on the value of the billboards.

■ Although the billboards were physically annexed to the real estate, the trial court found that billboards were easily removable and removed from the property without materially injuring the billboards or the property to which they were annexed and that the billboards were trade fixtures.[8] Trial court opinion at pp. 8–9. Based upon these findings, the trial court determined that the billboards were personalty, not realty. Upon making this determination the trial court chose to rely upon the method of valuation advanced by Commonwealth which calculated the value of the billboards as personalty under the reproduction approach, finding this method to be the only acceptable method of appraisal in this case.

The trial court's treatment of the billboards as personalty and valuation under the

---

**8.** Trade fixtures are personal property used by tenants in carrying on business. Such fixtures

retain the character of personal property.

reproduction approach is in concert with *Pittsburgh Outdoor* and the laws of Pennsylvania We, therefore, conclude that the verdict issued by the trial court fully and justly compensates Patrick Media for the value of the billboards.

Patrick Media also contends that the trial court erred by its failure to consider whether the condemned billboards could be relocated. We disagree.

Contrary to the assertions made by Patrick Media, the Supreme Court's decision in *Pittsburgh Outdoor* did not turn on the ability or inability of the billboards to be relocated. The court merely stated that "at least in theory and hopefully in practice" comparable billboard locations could be obtained. *Id.* at 325, 272 A.2d at 165. Although Patrick Media presented evidence that present legal restrictions on the location of billboard sites makes it virtually impossible to obtain substitute leaseholds, the trial court specifically rejected this evidence as "speculative." This finding will not be disturbed on appeal. *See Estate of Shelly*, 484 Pa. 322, 399 A.2d 98 (1979) (findings of a trial court in a non-jury case must be be give the same weight and effect on appeal as a verdict of a jury, and those findings will not be disturbed on appeal absent an error of law or clear abuse of discretion.).

Accordingly, the verdict of the trial court is affirmed.

### ORDER

AND NOW, this 5th day of August, 1998, the non-jury verdict issued by the Court of Common Pleas of Allegheny County, at No. GD 97–17928, awarding damages to Patrick Media in the amount of $34,698, is affirmed.