The STATE of Texas, Petitioner,

v.

CENTRAL EXPRESSWAY SIGN
ASSOCIATES, et al.,
Respondents.

No. 08–0061.

Supreme Court of Texas.

Argued Jan. 13, 2009.

Decided Nov. 20, 2009.

868

Greg W. Abbott, Atty. Gen., Kent C. Sullivan, Clarence Andrew Weber, First Asst. Atty's Gen., David S. Morales, Kristina Weber Silcocks, Susan Desmarais Bonnen, Lisa Marie McClain, Office of Atty. General, Jeffrey A. Blackwelder, Gregory Dion Miller, Asst. Atty's Gen., John L. Ritts, Austin, for Petitioner.

E. Lawrence Vincent Jr., Plano, Joe H. Staley Jr., Benjamin Tyler Milton, Law Office of Joe H. Staley, Jr., Donya C. Folco, J. Allen Smith, SettlePou, Dallas, Richard L. Rothfelder, Rothfelder & Falick, L.L.P., Sydney N. Floyd, Houston, for Respondents.

Craig Smyser, Smyser Kaplan & Veselka, L.L.P., Houston, for Amicus Curiae City of Burleson.

Julia F. Pendery, Dallas, for Amicus Curiae Roger H. Lawler.

Justice O'NEILL delivered the opinion of the Court.

We issued an opinion in this case on June 26, 2009. Today, we deny the motion for rehearing filed by respondent Central Expressway Sign Associates, withdraw our prior opinion, and substitute the following.

The Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." TEX. CONST. art. I, § 17. Adequate compensation does not include profits generated by a business located on condemned land. *Herndon v. Hous. Auth.*, 261 S.W.2d 221, 222–23 (Tex.Civ. App.-Dallas 1953, writ ref'd). In this case, the State condemned an easement that was leased to an advertising company for the purpose of erecting a billboard and selling advertising space. The trial court struck the condemnor's expert witness as unreliable for failing to include in his estimate of fair market value the income the billboard generated from advertising sales. Because the State's expert applied an accepted methodology for valuing the condemned property, we conclude the trial court reversibly erred in excluding his testimony.

## I. Background

The State filed a petition to condemn a 3,950–square foot parcel of land in Dallas that was needed to improve a highway interchange. Central Expressway Sign Associates (CESA) held an easement for the construction and operation of a bill-board on an 1,801–square foot parcel, most of which was contained in the parcel to be condemned. The easement was leased to Viacom Outdoor, Inc., for the greater of $11,000 per year or twenty-five percent of billboard advertising revenues after paying limited agency commissions, with the base rent rising to $11,500 after one year and $12,000 after two. Viacom sold advertising space on a billboard that had been constructed on the property. At the time of condemnation, the billboard generated $168,000 per year in advertising revenue. After court-appointed special commissioners determined that the fair market value of the property to all of the interest holders was $2,012,300,[1] the State objected and demanded a jury trial. The State reached a settlement agreement with the underlying fee owner and another leaseholder, and the State acquired title to the fee interest. The State also settled its condemnation suit against Viacom by agreeing to pay relocation benefits, and Viacom relocated its billboard to a new location. Thus, this case does not involve the acquisition of a billboard structure and Viacom was able to place its billboard elsewhere. Viacom remained a party to the State's suit against CESA, however, because of a dispute arising out of the settlement agreement over interest and attorneys' fees, which dispute proceeded separately from the trial on the merits between the State and CESA. As a result, the trial court's final judgment included acquisition of both CESA's and Viacom's interests in the property.

Before trial, the State challenged CESA's appraisal expert, claiming that he had improperly included in his appraisal business profits that Viacom's billboard generated and had mischaracterized the billboard structure as realty rather than

---

1. The special commissioners' award was divided as follows:

| | |
|---|---|
| CLBJ, Inc., fee owner | $280,000 |
| Perry (Eller), a leaseholder | $784,500 |
| CESA, easement holder | $100,000 |
| Viacom, leaseholder | $847,800 |

personalty. The trial court struck CESA's expert for mischaracterizing the billboard structure, and neither Viacom nor CESA challenge that ruling here. The trial court also granted CESA's challenge to the State's expert appraiser, Grant Wall. Wall used the income approach to valuing property, which estimates future rental income generated by the property and applies a capitalization rate to arrive at a present value. Wall capitalized the income Viacom paid CESA in rent for the easement, and estimated the fair market value to be $359,817. At a pretrial hearing, the trial court excluded Wall's testimony as unreliable because he did not include billboard advertising revenues in his appraisal. As a result, CESA's two principals, George Allen and Randolph Perry, offered the only estimates of the property's value. They both estimated the property was worth $2,500,000. The jury found the fair market value of the property to be $1,850,000, and the trial court entered a judgment for that amount. The court of appeals affirmed. 238 S.W.3d 800. We granted the State's petition for review to consider the reliability of its expert's methodology in estimating the fair market value of the condemned property.

## II. Standard of Review

An expert's opinion, to be admissible, must be relevant and reliable. *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 628 (Tex.2002). To be relevant, the expert's opinion must be based on the facts; to be reliable, the opinion must be based on sound reasoning and methodology. *Id.* at 629; *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex.1997). We review a trial court's determination that a witness's testimony is unreliable for an abuse of discretion. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex.2001). A trial court abuses its discretion in excluding expert testimony if the testimony is relevant to the issues in the case and is based on a reliable foundation. *Zwahr*, 88 S.W.3d at 628; *Helena Chem. Co.*, 47 S.W.3d at 499.

For the exclusion of evidence to constitute reversible error, the complaining party must show that (1) the trial court committed error and (2) the error probably caused the rendition of an improper judgment. *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex.1992); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989). We have recognized the impossibility of prescribing a specific test to determine whether a particular error is harmful, and entrust that determination to the sound discretion of the reviewing court. *McCraw*, 828 S.W.2d at 757–58; *Lorusso v. Members Mut. Ins. Co.*, 603 S.W.2d 818, 821 (Tex.1980). In making this determination, the court must review the entire record. *Gee*, 765 S.W.2d at 396; *Lorusso*, 603 S.W.2d at 821. "[I]t is not necessary for the complaining party to prove that 'but for' the exclusion of evidence, a different judgment would necessarily have resulted." *McCraw*, 828 S.W.2d at 758. The complaining party must only show "that the exclusion of evidence probably resulted in the rendition of an improper judgment." *Id.* The role that excluded evidence plays in the context of the trial is also important. Thus, the exclusion or admission is likely harmless if the evidence was cumulative, or the rest of the evidence was so one-sided that the error likely made no difference in the judgment. *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex.2008). But if erroneously admitted or excluded evidence was crucial to a key issue, the error is likely harmful. *Id.*

## III. Exclusion of Grant Wall's Testimony

The State argues that it is entitled to a new trial because the trial court

erred in excluding expert appraiser Grant Wall's testimony. The trial court found that Wall's testimony was unreliable because he did not include billboard advertising revenues in his estimate of the easement's value. Texas recognizes three approaches to determining the market value of condemned property: the comparable sales method, the cost method, and the income method. *City of Harlingen v. Estate of Sharboneau,* 48 S.W.3d 177, 182 (Tex.2001). The comparable sales method is the favored approach, but when comparable sales figures are not available, courts will accept testimony based on the other two methods. *Id.* at 182–83. The cost approach looks to the cost of replacing the condemned property minus depreciation. *Id.* at 183 (citing *Religious of the Sacred Heart v. City of Houston,* 836 S.W.2d 606, 615–16 (Tex.1992)). The income approach is appropriate when the property would be priced according to the rental income it generates. *Sharboneau,* 48 S.W.3d at 183 (citing *Polk County v. Tenneco, Inc.,* 554 S.W.2d 918, 921 (Tex. 1977)). All three methods are designed to approximate the amount a willing buyer would pay a willing seller for the property. *Id.*

■ Texas law allows income from a business operated on the property to be considered in a condemnation proceeding in two situations: (1) when the taking, damaging, or destruction of property causes a material and substantial interference with access to one's property, *see City of Austin v. The Avenue Corp.,* 704 S.W.2d 11, 13 (Tex.1986); and (2) when only a part of the land has been taken, so that lost profits may demonstrate the effect on the market value of the remaining land and improvements, *see City of Dallas v. Priolo,* 150 Tex. 423, 242 S.W.2d 176, 179 (1951). Absent one of these two situations, income from a business operated on

the property is not recoverable and should not be included in a condemnation award. Courts have applied this rule for two reasons: first, because profits from a business are speculative and often depend more upon the capital invested, general market conditions, and the business skill of the person conducting it than it does on the business's location; and second, because only the real estate and not the business has been taken and the owner can presumably continue to operate the business at another location. *Herndon,* 261 S.W.2d at 223.

Texas courts have refused to consider business income in making condemnation awards even when there is evidence that the business's location is crucial to its success. *See, e.g., State v. Rogers,* 772 S.W.2d 559, 561–62 (Tex.App.-Amarillo 1989, writ denied) (refusing consideration of "going concern" and "goodwill" values of auto parts store that caters to and depends upon nearby businesses); *City of Austin v. Casiraghi,* 656 S.W.2d 576, 579–80 (Tex. App.-Austin 1983, no writ) (refusing to consider business income of well-located restaurant); *State v. Villarreal,* 319 S.W.2d 408, 410 (Tex.Civ.App.-San Antonio 1958, writ ref'd n.r.e.) (upholding exclusion of evidence of income generated by grocery store); *Marshall v. City of Amarillo,* 302 S.W.2d 943, 945 (Tex.Civ.App.-Amarillo 1957, no writ) (refusing to consider income generated by pawn shop).

CESA and Viacom argue that billboard advertising revenue is derived from the intrinsic value of the land, and therefore that revenue should be treated like rental income for purposes of an income-method appraisal. In support of their position, they cite *Herndon,* in which the court of appeals refused to consider income from a grocery business operated on condemned land, but noted that evidence of "rents and profits derived from the intrinsic nature of

the real estate itself" would be admissible. 261 S.W.2d at 223. The *Herndon* court cited several examples from other states, including cases where income derived from a stone quarry, agricultural and livestock operations, and toll roads and bridges has been considered in placing a value on condemned land. *Id.*

Other states that have addressed this issue have come to varying conclusions. Some have held that the revenue from billboard advertising should not be considered in estimating the market value of condemned property. *See, e.g., Comm'r of Transp. v. Rocky Mountain, LLC,* 277 Conn. 696, 894 A.2d 259, 283–85 (2006); *City of Newport Mun. Hous. Comm'n v. Turner Adver., Inc.,* 334 S.W.2d 767, 770–71 (Ky.1960); *State Dept. of Transp. & Dev. v. Chachere,* 574 So.2d 1306, 1310–11 (La.Ct.App.1991); *Wray v. Stvartak,* 121 Ohio App.3d 462, 700 N.E.2d 347, 354 (1997); *In re Urban Redevelopment Auth.,* 440 Pa. 321, 272 A.2d 163, 165 (1970); *Vivid, Inc. v. Fiedler,* 219 Wis.2d 764, 580 N.W.2d 644, 658–59 (1998). These courts reason that billboard advertising revenues are too speculative to use as an estimate of the fair market value of land, *see Turner,* 334 S.W.2d at 770, and that any portion of the revenues attributable to the sign's location should be reflected in the fair rental value of the premises, *see In re Urban Redevelopment Authority of Pittsburgh,* 272 A.2d at 165. And although the court of appeals cited *Vivid, Inc. v. Fiedler* as supporting its opinion, in fact the majority of the justices opined that an appraisal based on billboard advertising income impermissibly compensates for business profits. 580 N.W.2d at 658. The Wisconsin Supreme Court emphasized that the billboard owner is a "comprehensive advertising enterprise" that "actively markets the availability of its billboards, employs an artist to create the advertising copy for its clients, and creates the actual advertise-

ment materials." *Id.* Accordingly, the trial court was directed to closely examine the offered appraisal to ensure that it did not include compensation for business income. *Id.* at 659.

Other states have decided that billboard advertising revenues may properly be considered in estimating the value of real property. *See State Dept. of Transp. v. Powell,* 721 So.2d 795, 798 (Fla.Dist.Ct. App.1998); *In re Acquisition of Billboard Leases & Easements,* 205 Mich.App. 659, 517 N.W.2d 872, 873 (1994); *State v. 3M Nat'l Adver. Co.,* 139 N.H. 360, 653 A.2d 1092, 1094, 1096 (1995); *Lamar Corp. v. Commonwealth Transp. Comm'r,* 262 Va. 375, 552 S.E.2d 61, 66 (2001).

But Texas courts have not recognized the exception alluded to in *Herndon* for business profits "derived from the intrinsic nature of the real estate." 261 S.W.2d at 223. Profits from an existing farming business have been excluded as unreliable evidence of a property's value because they depend on weather, labor, market conditions, and other factors that may vary from year to year. *See Bridges v. Trinity River Auth.,* 570 S.W.2d 50, 53–54 (Tex. Civ.App.-Tyler 1978, writ ref'd. n.r.e.) (citing *Lower Nueces River Water Supply Dist. v. Sellers,* 323 S.W.2d 324 (Tex. Civ. App.-San Antonio 1959, writ ref'd. n.r.e.)). Texas courts have also excluded evidence of profits from mining businesses operated on condemned land. *See Nelson v. Jefferson County,* No. 09-95-208CV, 1997 WL 464808, 1997 Tex.App. LEXIS 4411 (Tex. App.-Beaumont Aug. 14, 1997, pet. denied) (not designated for publication) (affirming trial court's exclusion of evidence that land was particularly suitable for future dirt pit operations); *Reilly v. State,* 382 S.W.2d 116, 120–21 (Tex.Civ.App.-San Antonio 1964, writ ref' d n.r.e.) (affirming trial court's exclusion of evidence of income derived from selling topsoil and caliche grav-

el). In *Reilly,* evidence of the value of gravel or other material as it lies in its natural state in the ground was held admissible, but evidence to show the value of material that had been taken from the ground and had become a commodity was excluded. 382 S.W.2d at 121; *see also State v. Angerman,* 664 S.W.2d 794, 796 (Tex.App.-Waco 1984, writ ref'd n.r.e.) (holding there was no error in instructing jury to consider gravel deposits only as "a part of the land" and not as having any market value separate from the land).

We are not inclined to create an exception for land on which a billboard is placed. Although CESA and Viacom consider billboards unique, there is nothing to indicate that a billboard's location is any more significant to their business than it would be to a retail establishment whose profitability depends upon visibility and easy access. Moreover, profits from a billboard advertising business depend upon more than just the land itself. The business involves securing permits for the operation of billboards, constructing, lighting, and maintaining the billboards, and employing personnel to sell advertising space and to place and remove the advertisements. If there were no business effort or skill involved in operating a billboard business beyond "renting" the space to advertisers, one would expect the rental rate of the easement to more closely approximate the advertising income Viacom received. Viacom and CESA cannot argue simultaneously that (1) the billboard generates $168,000 per year in advertising income while CESA only charges Viacom the greater of $12,000 per year or twenty-five percent of advertising revenue; and (2) Viacom does not employ any business skill beyond that of a "landlord" in order to profit from this arrangement. If, as CESA and Viacom argue, the operation of a billboard is much like renting real property, CESA would have no reason to

charge so much less in rent than Viacom receives from its advertising sales.

■■■■ Viacom and CESA argue that Wall's appraisal violates the "undivided-fee rule" and was properly excluded by the trial court on this basis alone. The undivided-fee rule states that when real property has been carved into different interests, the property is valued for condemnation purposes as if it were owned by a single party. *State v. Ware,* 86 S.W.3d 817, 822 (Tex.App.-Austin 2002, no pet.); *Aronoff v. City of Dallas,* 316 S.W.2d 302, 307–08 (Tex.Civ.App.-Texarkana 1958, writ ref'd n.r.e.). The purpose of the rule is to award full compensation for the land itself, and not for the sum of the different parts. *Id.* at 824. Thus, while each interest-holder is entitled to a share of the compensation award, the award should be paid for the property itself, then apportioned between them. *Aronoff,* 316 S.W.2d at 307–08. When the property is subject to a lease, the fact-finder first determines the market value of the entire property as though it belonged to one person, then apportions that value between the lessee and the owner of the fee. *Urban Renewal Agency v. Trammel,* 407 S.W.2d 773, 774 (Tex.1966) (citing *Aronoff,* 316 S.W.2d at 302).

■■■■ According to CESA and Viacom, Wall failed to correctly apply the undivided-fee rule because he did not value the leasehold estate. This argument both misinterprets the undivided-fee rule and misunderstands Wall's appraisal. The rule merely ensures that the goal of an appraiser will always be to approximate what the entire property would sell for in a market transaction, which is precisely what Wall did. Wall did state in response to questioning by CESA's counsel that the leasehold itself would only have positive value if the agreed rent was less than the ease-

ment's fair rental value, and it was not, but this observation played no part in Wall's valuation of the easement as a whole. Contrary to what CESA and Viacom suggest, Wall appraised the fee simple value of the easement, which included the leasehold interest, and he assigned no separate value to the leasehold estate. Moreover, Wall's appraisal did not overlook the value of the property as a billboard location because he valued the easement as put to its highest and best use. The rent Viacom paid CESA, which formed the basis of Wall's income-method appraisal, also accounted for the value of the location; a property better suited to billboard advertising would presumably be able to command a higher rent.

Thus, we hold that Wall's testimony reflected an accepted and reliable method of appraising the condemned easement and it should not have been excluded. We believe the error was reversible because Wall's testimony was directly related to the central issue in the case, the value of the condemned property.

The State also argues that the trial court erred in admitting the testimony of CESA's principals because their estimates were based on billboard advertising revenues. CESA and Viacom argue that the principals' testimony was based on their knowledge of the fair market value of the property as owners and as persons involved in the Dallas real estate market. It is not clear that the principals' testimony was based on advertising revenue, although they did mention it. Under Texas law, an owner of property is qualified to testify to the property's market value. *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984). On remand, the trial court should not allow evidence of valuation based on advertising income. General estimates of what the property would sell for consider-

ing its possible use as a billboard site are acceptable.

## IV. Conclusion

We conclude that the trial court abused its discretion in excluding Wall's testimony. We reverse the judgment of the court of appeals and remand for a new trial.

Justice GUZMAN did not participate in the decision.