

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00006-CV

_____


DALE BLANTON RUSSELL AND
LORETTA RUSSELL KINGSLEY, Appellants

V.

TREY BECK, AS EXECUTOR OF THE ESTATE OF
HAYDEN RUSSELL, Appellee



On Appeal from the 217th Judicial District Court
Angelina County, Texas
Trial Court No. CV-36,849



Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

## I. Background and Procedural Posture

Hayden Russell placed on record in Angelina County twelve quitclaim deeds, purportedly executed by his father, Dale Blanton Russell.[1] The deeds conveyed Dale's interest in real estate to Hayden and Hayden's sister, Loretta Russell Kingsley. In this suit, Dale alleges the deeds were forged by Hayden after Hayden learned his father was disinheriting him; the jury found Dale signed the deeds. The suit was originally tried to the court, but resulted in a mistrial. After the first suit, Hayden died, leaving a will which left his estate (except one dollar left to his daughter, Cynthia Keiser) to his friend Trey Beck.[2]

Even though the only jury question was whether Dale signed the deeds, the issue presented on appeal is an evidentiary ruling on whether the entirety of the will of the alleged forger, Hayden, should have been admitted into evidence.

Prior to trial, the court granted the estate's motion in limine regarding the identity of the beneficiaries of Hayden's will, after having determined that this information was not relevant to

---

[1] Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2] The parties were realigned prior to commencement of trial so that Kingsley was named as a plaintiff, together with Russell.

the issue of whether the signatures on the quitclaim deeds were forged.[3]  A three-day jury trial ensued in August 2010.  During the course of the trial, Dale reurged his motion to admit Hayden's will into evidence.  Dale offered the will to show that Hayden did not name Kingsley as a beneficiary in rebuttal of Hayden's testimony.[4]  As further grounds for admission, Dale argued that the testimony of the witness (and probate attorney) Jim Farrell revealed that his file contained notes to the effect that Hayden intended to leave half of his estate to Kingsley and half to Cindy, except that Cindy was to receive an extra $1,000.00.  Dale argued that as a result, the jury was left with the impression that Hayden either left everything to Kingsley or to Kingsley and Cindy, when in fact, Hayden's will essentially disinherited Cindy.[5]

The estate opposed the admission of Hayden's will on the ground that it was irrelevant and would be like throwing "the skunk in the jury box."  Counsel for the estate urged:

> [The Will] has no relevance to any issue which Mr. Seale has now argued . . . [the] more narrow [issue of] forgery, just the signature is the only issue.  Certainly our client's Will . . . and who the beneficiaries of the estate are, bear no rational

---

[3]Dale sought to introduce Hayden's will to show that Trey Beck was the sole beneficiary of the will and that Hayden did not leave anything to his daughter.  Dale argued to the trial court that the estate had taken the position that it was "unbelievable, that Dale Russell would not leave anything to his only child and that is exactly what Hayden Russell did."  The court indicated that to the extent the estate "goes into statements or arguments that what kind of person would leave their child or one of their children or all of their children out of that will, then you can come back and balance that out with this information."

[4]Hayden's transcribed testimony for the earlier trial was read to the jury without objection.  That testimony revealed that after Dale signed the quitclaim deeds, Hayden delivered the deeds to Kingsley to place in her safety deposit box.  When Hayden delivered the deeds to Kingsley, he testified that he also delivered a will, "willing everything in my possession to her so if something happened to me, someone else wouldn't get, you know, a part of that property."

[5]Hayden's actual will left his entire estate (with the exception of a one dollar bequest to Cindy) to his friend Trey Beck, who was also named the executor of Hayden's estate.

3

evidentiary basis as to whether the man [Dale Russell] signed the signatures [on the deeds] or not . . . . The 403 argument is still there.

The trial court initially ruled that Hayden's entire will was admissible. After the court read the will and was confronted with the fact of Cindy's disinheritance, the court determined (as a compromise offered by the estate) to admit the will into evidence only after the amount of the bequests to Cindy and to Beck were redacted. A copy of Hayden's redacted will was thereafter introduced into evidence. Dale introduced an unredacted copy of Hayden's will via a bill of exception. Although the estate objected to the introduction of Hayden's unredacted will, it did not object to the introduction of Hayden's redacted will.

The evidence at trial included the testimony of handwriting experts for both Dale and the estate. At the conclusion of the evidence, the jury determined that the deeds were signed by Dale.

## II.    Appellate Issues

Only one question was asked of the jury: "Do you find . . . the deeds . . . were signed by someone other than Dale Russell?" The jury answer was: "No, They were signed by Dale Russell." On appeal, Dale does not dispute the jury's dispositive finding that the twelve deeds were executed by him. Rather, Dale sets out five issues, all of which basically argue that Hayden's will should have been admitted in its entirety.

The estate presents seven counter-issues, which argue that, for a variety of reasons, the trial court did not err in its decision to admit only a redacted version of Hayden's will or that if any error occurred, it was harmless.

4

Because we find (1) no violation of the rule of optional completeness in disallowing introduction of the unredacted will; (2) the specific bequests in Hayden's will are not relevant to the issue of forgery; and (3) any perceived probative value of those bequests was substantially outweighed by the danger of unfair prejudice, the trial court did not abuse its discretion in refusing to admit into evidence Hayden's unredacted will. We affirm the judgment of the trial court.

## III. Analysis

Together, Dale's appellate issues and the estate's counter issues call for the ultimate determination of whether the trial court abused its discretion in refusing to admit into evidence Hayden's unredacted will. The admission or exclusion of evidence is a matter within the sound discretion of the trial court. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995); *Hathcock v. Hankook*, 330 S.W.3d 733, 740 (Tex. App.—Texarkana 2010, no pet.). A trial court abuses its discretion when it acts without regard for any guiding rules or principles. *Downer v. Aquamarine Operators*, 701 S.W.2d 238, 241–42 (Tex. 1985); *Hathcock*, 330 S.W.3d at 740. Moreover, we must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

### A. Optional Completeness

Dale initially asserts that the unredacted will was admissible under Rules 106 and 107 of the Texas Rules of Evidence, often jointly referred to as the rule of optional completeness. Rule 106 provides:

When a writing or recorded statement or part thereof is introduced *by a party*, an *adverse party* may at that time introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it. "Writing or recorded statement" includes depositions.

TEX. R. EVID. 106 (emphasis added). Rule 107 provides, in pertinent part:

When part of an act, declaration, conversation, writing or recorded statement is given in evidence by *one party*, the whole on the same subject *may be inquired into by the other*, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence . . . .

TEX. R. EVID. 107 (emphasis added).

We are unconvinced that the rule of optional completeness applies. Here, both the redacted and unredacted will were offered into evidence by Dale. The estate objected to admission of the unredacted will, but as a compromise agreed to admission of the will in a redacted form. The rule of optional completeness only applies when one party introduces part of a statement or document, and in fairness, the opposing party is permitted to introduce as much of the balance as is necessary to explain the first part. *Jones v. Colley*, 820 S.W.2d 863, 866 (Tex. App.—Texarkana 1991, writ denied). It is permitted to correct any misleading impressions left when one party introduces only a portion of the evidence. *See Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000). A plain reading of Rules 106 and 107 indicates their inapplicability when the same party seeks to offer an inadmissible omitted portion of a document it initially sought to introduce. Here, Dale's introduction of admissible evidence (the redacted will) does not open the door to his further introduction of otherwise inadmissible evidence (the unredacted will).

6

This rule does not apply for yet another reason. Under the rule of optional completeness, additional material from a document or recording, part of which has been admitted into evidence, is admissible if that material "ought in fairness to be considered contemporaneously." *Meuth v. Hartgrove*, 811 S.W.2d 626, 629 (Tex. App.—Austin 1990, writ denied). Dale complains that if the will was going to be admitted into evidence, the specific bequests to Cindy and Beck should not have been redacted. The trial court admitted the redacted will for the purpose of showing Kingsley was not a beneficiary[6] (thus clarifying earlier testimony that Hayden perhaps left his entire estate to Kingsley). In our view, redacting the specific bequests was an effective method of accomplishing the limited purposes for which the will was admitted. In *Meuth*, the trial court admitted an insurance certificate into evidence for the limited purpose of demonstrating ownership and control of a particular company. The policy limits were redacted because they were not relevant to the issue of ownership and control and were prejudicial as to the issue of damages. *Id.* at 629. The same reasoning applies here. The specific bequests to Cindy and to Beck were not relevant to the issue of Kingsley's omission from the will; the rule of optional completeness does not require the inclusion of these bequests.

We overrule this point of error.

**B.      Relevance of Specific Bequests**

---

[6]The trial court stated that it was "letting him put in the will not on the basis of his conversation with the Attorney Farrell but strictly on the basis of the testimony of Mr. Hayden Russell about the will leaving . . . everything to Loretta [Kingsley] . . . ." The court went on to say that "the fact that the daughter gets $1 is not really pertinent . . . . but the fact that the sister's left out, I think, is."

7

Dale claims the unredacted will should have been admitted because evidence of its specific bequests met the requirements of Rule 401 of the Texas Rules of Evidence. Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Rule 402 provides that evidence which is not relevant is inadmissible. TEX. R. EVID. 402.

In support of his assertion of relevance, Dale maintains that he was not permitted to answer the estate's closing argument:

> But there's a tendency sometimes to get inpatient [sic] with your children, but that doesn't justify - - - doing to a son what this man has done to his son. That's terrible. It's not acceptable. It's not right. And the fact is he told a lie. He said he didn't sign the deeds. Science said he did.

Dale maintains that had the entire, unredacted will been in evidence, this argument could have been answered by reminding the jury that Hayden disinherited his only child. This case was not about Hayden's disinheritance of his daughter; it was about forgery. Evidence that Hayden left his only child out of his will is not relevant in proving that he forged his father's name on the deeds. The specific bequests in Hayden's will say nothing about the dynamics of any motivation he allegedly had to forge the deeds executed some two years prior to the will.

The jury argument did not make the unredacted will relevant to the issue of forgery. This argument appears to relate to the fact that Dale sued his son, claiming Hayden forged the deeds in

8

question. Counsel refers to this as "unacceptable." If Dale believed this argument to be outside the scope of the evidence presented or otherwise erroneous, his remedy was to object, ask the court to instruct the jury to disregard counsel's statement, and move for a mistrial if necessary. This he did not do. We cannot conclude that evidence of Hayden's unredacted will tends to make the likelihood that Hayden forged the quitclaim deeds more probable or less probable than it would be without this evidence.[7]

### C. Rule 403

The estate maintains on appeal that even if Hayden's unredacted will was relevant, it was properly excluded under Rule 403 of the Texas Rules of Evidence. We agree. Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. When a party objects under Rule 403, a trial court must conduct a balancing test, weighing the danger of prejudice against the probative value of the evidence. *Waldrep v. Tex. Employers Ins. Ass'n*, 21 S.W.3d 692, 703 (Tex. App.—Austin 2000, pet. denied). The redacted portions of the will would have informed the jury that Hayden left his entire estate to his friend Beck. We have agreed that the probative value of this evidence on the issue of forgery was minimal. The trial court was within its discretion to conclude that any perceived probative value it may have had

---

[7]To the extent Dale maintains the unredacted will should have been admitted for the purpose of establishing the proper parties (or the real parties in interest), that concern was addressed in the admission of the redacted will; it shows the identity of the beneficiaries, but does not show the bequests to those beneficiaries.

was substantially outweighed by the risk of unfair prejudice. We also note that any error in the exclusion of evidence is not reversible unless the error "probably caused the rendition of an improper judgment." *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009). Here, Dale does not present argument or briefing that this evidentiary ruling "probably caused the rendition of an improper judgment."

## IV.    Conclusion

The trial court did not abuse its discretion in excluding Hayden's unredacted will from evidence. We affirm the judgment of the trial court.


Jack Carter
Justice


Date Submitted:    May 5, 2011
Date Decided:    June 7, 2011