NO. 12-06-00295-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

IN THE INTEREST OF B.G.,                     §                      APPEAL
FROM THE 217TH

 

C.W., E.W., B.B.W. AND
J.W.,                    §                      JUDICIAL DISTRICT COURT

 

CHILDREN                                                   §                      ANGELINA
COUNTY, TEXAS







MEMORANDUM
OPINION

            L.W.
appeals the termination of his parental rights. In three issues, J.W.
challenges the trial court’s order of termination.  We affirm.

 

Background

            L.W.
is the stepfather of B.G. and the father of C.W., E.W., B.B.W., and J.W.[1]  B.G., who was fourteen years
old at the time, told her teacher that L.W. was sexually abusing her.  The
Department of Family and Protective Services (the Department) investigated
L.W.’s alleged inappropriate relationship with B.G., as well as the conditions
of L.W.’s home and his parenting abilities.  Shortly thereafter, the Department
removed all of the children from L.W.’s home. Then, the Department filed a
petition for protection of B.G., C.W., E.W., B.B.W., and J.W., for
conservatorship, and for termination of L.W.’s parental rights. 

During
this same time period, L.W. was the subject of a criminal investigation. 
Before the termination suit went to trial, a jury convicted L.W. of one count of
aggravated sexual assault, and one count of sexual assault. The jury assessed
L.W.’s punishment at eighty years of imprisonment and a $10,000 fine for his
aggravated sexual assault conviction, and twenty years of imprisonment and a
$10,000 fine for his sexual assault conviction.  L.W.’s criminal trial concluded
only two weeks before the trial of this case.

A
bench trial began on May 23, 2006. At that time, L.W. was represented by
counsel.  The case was recessed until July 13, 2006.  Before the first witness
finished testifying on July 13, L.W. terminated his counsel, and proceeded without
counsel for the remainder of the trial. At trial, the Department confirmed that
it did not seek to terminate L.W.’s parental rights based on his previous
convictions. At the conclusion of the trial, the trial court found, by clear
and convincing evidence, that (1) L.W. knowingly placed or knowingly allowed
the children to remain in conditions or surroundings that endangered their
physical or emotional well-being, (2) L.W. engaged in conduct or knowingly
placed the children with persons who engaged in conduct that endangered their
physical or emotional well-being, and that (3) termination was in the
children’s best interest. Thus, the trial court terminated the parent-child
relationship between L.W. and his children C.W., E.W., B.B.W., and J.W. 

After
appellate counsel was appointed, L.W. filed his statement of points for
appeal.  Believing L.W.’s statement of points was not timely filed and that there
was no substantial question for appellate review, the trial court did not
provide L.W. a free record for his appeal.  L.W. appealed to this court, and we
affirmed the judgment of the trial court.  See In re B.G., 317
S.W.3d 259, 261 (Tex. App.—Tyler 2007), rev’d and remanded, 317 S.W.3d
250 (Tex. 2010). After granting L.W.’s petition for review, the Texas Supreme
Court determined that Section 263.405, as applied to L.W., deprived him of due
process.  See In re B.G., 317 S.W.3d 250, 258 (Tex. 2010). 
Therefore, the supreme court reversed this court’s judgment and remanded the
case with instructions that we “should consider the issues raised in [L.W.’s]
statement of points as if it had been timely filed.”  Id. 

 

Standard of Review for Evidentiary Rulings

We
review a trial court’s evidentiary rulings for abuse of discretion.  Owens-Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998).  A trial
court abuses its discretion if it acts without reference to any guiding rules
or principles or if its actions are arbitrary and unreasonable.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).

To
obtain reversal of a judgment based on a trial court’s error in admitting or
excluding evidence, the complaining party must show that (1) the trial court
committed an error, and (2) the error was reasonably calculated to cause, and
probably did cause, rendition of an improper judgment.  State v. Central
Expressway Sign Assoc., 302 S.W.3d 866, 870 (Tex. 2009); Gee v.
Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989); see
also Tex. R. App. P.
44.1(a)(1). 

In
reviewing a cause tried before the court, the appellate court generally assumes
that the trial court disregarded any incompetent evidence.  Gillespie v.
Gillespie, 644 S.W.2d 449, 450 (Tex. 1982).  The admission of such
evidence will generally not require reversal of the judgment when there is
competent evidence to authorize its rendition.  Id.  Any error in
excluding evidence is harmless if other admitted evidence reveals the same
facts as that which was excluded.  Bryant v. Transcon. Gas Pipe Line
Corp., 821 S.W.2d 187, 188 (Tex. App.—Houston [14th Dist.] 1991, writ
denied).  And error in the improper admission of evidence is usually deemed
harmless if the objecting party permits the same or similar evidence to be
introduced without objection. Richardson v. Green, 677 S.W.2d
497, 501 (Tex. 1984).  Moreover, no reversible error exists if the evidence in
question is cumulative or is not controlling on a material, dispositive issue. Roberts
v. Clark, 188 S.W.3d 204, 208 (Tex. App.—Tyler 2002, pet denied); see
also Nissan Motor Co., Ltd. v. Armstrong, 145 S.W.3d 131, 144
(Tex. 2004) (“Clearly, erroneous admission is harmless if it is merely
cumulative.”). Thus, evidentiary rulings will not cause reversal unless an
appellant demonstrates that the entire case turns on the evidence improperly
admitted. Roberts, 188 S.W.3d at 208. We determine whether the
case turns on the challenged evidence by reviewing the entire record. Gillespie,
644 S.W.2d at 450.

 

Admission of
Evidence

            In
his second and third issues, L.W. contends that the trial court abused its
discretion by admitting evidence of his criminal convictions for aggravated
sexual assault and sexual assault, and by admitting his psychological
evaluation. 

Applicable
Law

When
the supreme court expressly limits our review on remand, we are bound to follow
that restriction.  See Haupt, Inc. v. Tarrant Cnty. Water Control
& Improvement Dist. No. One, 870 S.W.2d 350, 352 (Tex. App.—Waco
1994, no writ.).  If we fail to do so, we abuse our discretion.  Lee v.
Downey, 842 S.W.2d 646, 648 (Tex. 1992).

Further,
Section 263.405 of the Texas Family Code applies to appeals from final orders
rendered in parental rights termination suits and dictates specific
requirements for the process.  See Tex.
Fam. Code Ann. § 263.405 (West 2008).  A party intending to appeal a
final order terminating parental rights must file with the trial court a
statement of points on which the party intends to appeal.  Id. §
263.405(b)(2).  The statement may be filed separately or may be combined with a
motion for new trial.  Id. § 263.405(b-1).  The statute
provides that an “appellate court may not consider any issue that was not
specifically presented to the trial court in a timely filed statement of
points.”  Id. § 263.405(i); In re B.G., 317 S.W.3d at
252.  Exceptions to this rule have been made only for claims of ineffective
assistance of counsel and certain constitutional complaints.  See In re
J.O.A., 283 S.W.3d 336, 339 (Tex. 2009); In re D.W., 249
S.W.3d 625, 632 (Tex. App.–Fort Worth 2008, pet. denied).

Analysis

            As
previously mentioned, the supreme court remanded this case with specific
instructions that we “should consider the issues raised in [L.W.’s] statement
of points as if it had been timely filed.” See In re B.G.,
317 S.W.3d at 258.  However, in his statement of points, L.W. did not complain
about the admission of his criminal convictions for aggravated sexual assault
and sexual assault, or the admission of his psychological evaluation. Because
L.W. failed to raise these issues in his statement of points and because our
remand was limited to issues raised in his statement of points, we may not
address these issues. See id.; see also Tex. Fam. Code Ann. § 263.405(i). 

Even
if we were to consider the merits of L.W.’s second and third issues, the
outcome would not change.  First, evidence of L.W.’s sexual assault of B.G. was
presented without objection.  But the record contains other evidence of the
sexual assault.  B.G.’s teacher, Nancy Bryant, testified that, in a
conversation, B.G. made an outcry statement that L.W. sexually assaulted her. 
Ruth Roberts, a licensed professional counselor, testified that, during
counseling, B.G. said L.W. sexually assaulted her.  Norma Sanford, a registered
nurse with Memorial Hospital, conducted a sexual assault nurse examination of
B.G. and testified that B.G. told her that L.W. sexually assaulted her. Mayreen
Dykes, a home health worker, provided services to L.W.’s brother as a certified
nurse’s aide. According to Dykes, L.W.’s brother lived with L.W. Dykes worked
in the house for approximately two and one-half years and provided
circumstantial evidence that L.W. sexually assaulted B.G.  Dykes testified that
if B.G. asked to go out with friends, L.W. would initially refuse.  Then, L.W.
and B.G. would go into the master bedroom, lock the door, and stay there
approximately thirty-five to forty-five minutes.  When they would come out,
B.G. would be allowed to go out with her friends. C.W. also testified that L.W.
would take B.G. into the master bedroom if she wanted to go out with friends.
He stated that it happened “a lot.” 

            Second,
evidence of L.W.’s criminal convictions was presented without objection.  But
the record also contains other evidence of the convictions.  Lindsay Tomes, a
conservatorship worker with Child Protective Services, testified that L.W. was
sentenced to eighty years in the penitentiary.  Frankie Clark, Ph.D., a
psychologist, testified that L.W. was going to prison for a long time and would
probably never get out.  John Martin, a CASA worker, testified that he was
aware that L.W. had been convicted of sexual assault.  Bobby Epperly, Jr., chief
of police of the Zavalla Police Department, testified that he obtained warrants
against L.W. for aggravated sexual assault of a child and sexual assault of a
child.

            Third,
evidence of L.W.’s psychological evaluation was presented without objection.
Clark testified that, if the evaluation stated that L.W. was schizoid, that
would mean that he has an unusual thought process and may be hearing and seeing
things that other people do not hear or see. If the evaluation stated that he
was histrionic, that would mean that L.W. becomes hysterical, blows things up,
and exaggerates. Further, Clark testified that if the evaluation stated that
L.W. was masochistic, that would mean that L.W. is self-defeating.

            Even
without the admission of L.W.’s criminal convictions and psychological
evaluation, strong evidence was presented, without objection, for termination
of L.W.’s parental rights.  Roberts testified that, during counseling, C.W. said
that he observed L.W. smothering B.G. with a pillow and chasing B.W., his
mother, with a knife.  C.W. testified at trial that L.W. fought with B.W. and
once took a knife into a room with B.W., locked the door, and threatened to
kill her.  C.W. stated that L.W. would sleep next to him naked.  He further
testified that he never wanted to see L.W. again.

Clark
testified that, during counseling, B.W. reported that L.W. was extremely
abusive toward her and the children, and said that he whipped all the children excessively,
except for B.G.  He agreed that family life with L.W. was violent and
terrible.  Lisa Soto, an investigation supervisor with Child Protective
Services, testified that L.W.’s house was a safety hazard for the children
because it was not clean. She stated that the house was cluttered and that
medical equipment for B.B.W. was not sterilized or it was rusty.  A.M.S.,
E.W.’s aunt, testified that E.W. told her L.W. would get into bed with him with
no clothes on, and that L.W. put his fingers into E.W.’s “bottom.”

Dykes
testified that L.W. was loud and verbally abusive, “holler[ing],” screaming,
and cursing at B.W. and the children. According to Dykes, B.W. and the children
were scared of L.W.  She also testified that the youngest child, J.W., spent
most of the time in his car seat while L.W. watched television or slept.  Dykes
testified that the house was not liveable, stating that it was roach infested
and “very nasty,” with clothes piled up in the wash room and garbage scattered
everywhere.  

In
summary, even if we were to address the merits of L.W.’s second and third
issues, it is clear that the evidence of L.W.’s criminal convictions is merely
cumulative of evidence properly received without objection. See Richardson,
677 S.W.2d at 501; Roberts, 188 S.W.3d at 208.  Furthermore, his
psychological examination was admitted without objection.  Also, even if the
challenged evidence had been excluded, other strong evidence supports the trial
court’s order.  Consequently, we would be unable to conclude from the record
that the entire case turned on L.W.’s convictions and his psychological
evaluation.  See Roberts, 188 S.W.3d at 208. And even if the
trial court erroneously admitted the evidence, we could not conclude, based
upon the record, that the error was reasonably calculated to cause, and
probably did cause, rendition of an improper judgment.  See Gee,
765 S.W.2d at 396.  

L.W.’s
second and third issues are overruled.

 

Exclusion of Evidence

            In
his first issue, L.W. argues that the trial court abused its discretion by
excluding the testimony of his sister, M.M., at trial.[2] 
The Department contends that M.M. was not present at the trial, and that L.W.
never called her to testify.

Trial
Proceedings

            On the
first day of trial, May 23, 2006, L.W.’s counsel informed the trial court that L.W.’s
mother and sister would testify, but that they were not present in court. 
Thus, L.W.’s counsel requested that, if these witnesses were not able to be at
court that day, the trial be recessed “until such time as they can come and
testify” on his behalf.  At the end of the day, L.W.’s counsel advised the
trial court that L.W. and one other witness would testify.   The trial court
then recessed the trial until July 13, 2006.

            When
the trial resumed, L.W.’s counsel told the trial court that L.W. and his sister,
M.M., would testify.  Shortly thereafter, L.W. asked to speak directly to the
trial court.  He complained that his witnesses were not present and blamed his
counsel, stating that he had “no witnesses to testify on [his] behalf.”  Before
the first witness finished testifying, L.W. terminated his counsel and
proceeded without counsel for the remainder of the trial. During the trial, L.W.
requested a continuance and a new trial because his witnesses were not present. 
The trial court overruled both requests.  Later, the trial court allowed L.W. to
call two witnesses out of order, Tammy Holder and Evelyn Standridge.  Both
Holder and Standridge testified that they knew M.M. from church and believed
she could take care of C.W.

            At
one point, L.W. requested that the trial be stopped, stating that his counsel
did not “bring [his] witnesses.”  However, the trial continued.  When the
Department rested, L.W. called Soto. After Soto testified, the trial court
refused to allow L.W. to call anyone else as a witness. During his closing
statement, L.W. again complained that his sister, M.M., and his mother had not
had the opportunity to testify.  Then, he again requested that his sister be
allowed to testify.  The trial court stated that L.W. could testify, but
refused to allow him to call his sister to testify.

Harm
Analysis 

            Having
read the entire record, we note that M.M. may not have been present and
available to testify. Further, L.W. may have been reurging his request for a
continuance or new trial when he asked that she be allowed to testify at the
conclusion of the trial.  Nevertheless, even if we assume that M.M. was
available to testify and that the trial court abused its discretion by
excluding her testimony, L.W. has failed to show harm. See Central
Expressway Sign Assoc., 302 S.W.3d at 870; Gee, 765
S.W.2d at 396.

            At
trial, L.W. told the trial court that he wanted M.M. to testify regarding the Department’s
investigation of her home. Vicky Winthrop, a kinship worker with the
Department, stated that she conducted a home study on M.M.’s home.  Winthrop
did not approve it as a potential home for the children because M.M. did not
believe that L.W. sexually assaulted B.G., did not get along with B.W., and had
negative comments about B.G.  Further, L.W. presented the testimony of two of
M.M.’s friends from church who asserted that M.M. would be able to take care of
C.W.  Thus, M.M.’s testimony regarding the home study would have been somewhat
cumulative of previously admitted testimony. See Gee, 765 S.W.2d
at 397; Rampel, 845 S.W.2d at 922. Moreover, whether M.M.’s home
was a potential placement for the children is a tangential issue as to whether
L.W.’s parental rights should be terminated.  

Regarding
the termination of L.W.’s parental rights, Dykes testified that M.M. visited
L.W.’s home “every once in a while.” Neither Dykes nor any other witness
testified that M.M. lived in the home. Thus, M.M.’s knowledge of L.W.’s alleged
sexual assault of B.G., and his abuse of B.W. and the children would have been
severely limited. As previously noted, there was overwhelming evidence
presented to show that L.W.’s parental rights should be terminated. Against
that evidence, M.M.’s possible testimony, as an occasional visitor, would have
been inconsequential.  Thus, even if the trial court erred in excluding M.M.’s
testimony, L.W. failed to show that this error was reasonably calculated to
cause, and probably did cause, rendition of an improper judgment.  See Central
Expressway Sign Assoc., 302 S.W.3d at 870; Gee, 765
S.W.2d at 397. Accordingly, L.W.’s first issue is overruled.

 

Disposition

            Having
overruled L.W.’s first, second, and third issues, we affirm the
trial court’s order of termination.

 

                                                                                    Brian Hoyle

                                                                       
Justice

 

 

Opinion delivered August 17, 2011.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

(PUBLISH)









                [1]
L.W. is the biological father of one other child, D.W., who was not part of
this termination suit.

 





                [2]
In his brief on remand, L.W. complains that he was not allowed to present all
of his witnesses at trial.  However, M.M. was the only witness discussed in
L.W.’s appellate brief.  To the extent that L.W.’s first issue complains that
the trial court excluded the testimony of other witnesses, L.W. has waived his
complaint by failing to provide a “clear and concise argument for the
contentions made, with appropriate citations to authorities and to the record.”
See Tex. R. App. P.
38.1(i).