Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# MEMORANDUM OPINION

No. 04-11-00815-CV

**IN THE INTEREST OF D.J.H. AND D.A.H.**, Children

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-PA-00972
Honorable Fred Shannon, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:    Karen Angelini, Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  May 9, 2012

AFFIRMED

Kathy H.[1] appeals from the trial court's order that terminated her parental rights to her sons, D.J.H. and D.A.H.  We affirm the judgment of the trial court.

## BACKGROUND

On May 10, 2010, the Texas Department of Family and Protective Services ("the Department") filed a Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship.  D.J.H. and D.A.H. were removed from the home at that time due to concerns of domestic violence.  A year and a half later, a bench trial was held.  At the conclusion of the trial, the trial court found by clear and convincing evidence that

---

[1] In accordance with TEX. R. APP. P. 9.8(b), we refer to the parent of the minor children by her first name and last initial only.

Kathy (1) failed to comply with the provisions of a court order that established the actions necessary to obtain the return of her children and (2) used a controlled substance in a manner that endangered the health and safety of her children and failed to complete a court-ordered substance abuse treatment program. *See* TEX. FAM. CODE ANN. § 161.001(1)(O), (P)(i) (West Supp. 2011). The trial court further found that termination of the parent-child relationship between Kathy and her children was in the best interest of the children. *Id.* at § 161.001(2) (West Supp. 2011).

### DISCUSSION

On appeal, Kathy principally argues the trial court erred in finding that (1) she failed to complete her service plan and (2) termination was in the best interest of the children.

### *Section 161.001(1)(O)*

The trial court found that Kathy failed to comply with the provisions of a court order that established the actions she needed to take to obtain the return of her children. *See* TEX. FAM. CODE ANN. § 161.001(1)(O). Kathy now argues that (1) there was no evidence that she was court-ordered to complete services under a service plan; (2) the trial court abused its discretion by admitting a court order after the parties rested; and (3) alternatively, there is insufficient evidence that Kathy failed to complete her service plan.

During trial, the Department sought to prove that Kathy failed to complete her service plan by not taking parenting classes or domestic violence classes, as well as by using illegal drugs and failing to complete therapy sessions. Marcella Pena, a caseworker for the Department, testified that she prepared a family service plan for Kathy. The family service plan given to Kathy on June 15, 2010 was admitted at trial as State's Exhibit 3 without objection.

During closing arguments, Kathy's attorney argued that a court-ordered service plan did not exist, and therefore the parent-child relationship could not be terminated on the basis of

Kathy's failure to complete a service plan. *See In re B.L.R.P.*, 269 S.W.3d 707, 711 (Tex. App.—Amarillo 2008, no pet.) (reversing and remanding order of termination where no court order existed, written or otherwise, establishing actions necessary for parent to obtain return of child). The Department responded that the service plan was incorporated by an order signed by the trial court at a status hearing on July 7, 2010. The July 7, 2010 order provides, in relevant part, that:

> 2.6    The Court, having reviewed the service plans filed by the Department, finds . . . that the service plans are reasonable, accurate, and in compliance with the previous orders of the Court.
>
> 2.8    The Court finds that [Kathy] has reviewed the service plans.
>
> 3.1    IT IS ORDERED that . . . the plan of service for [Kathy], filed with the Court or attached to this order and incorporated herein by reference as if the same were copied verbatim in this order, is APPROVED and made an ORDER of this Court.

Thus, the Department argued, the trial court could take judicial notice of the status hearing order requiring completion of the service plan. The trial court agreed, and took judicial notice of the July 7, 2010 status hearing order requiring completion of the service plan and admitted same.

We agree that the trial court properly admitted the July 7, 2010 court order by judicial notice. The trial court may take judicial notice of its file at any stage of the proceedings. *See* TEX. R. EVID. 201; *Barnard v. Barnard*, 133 S.W.3d 782, 786 (Tex. App.—Fort Worth 2004, pet. denied). It is clear that the service plan was approved by the trial court and that Kathy was ordered to comply with its terms. Thus, the trial court did not abuse its discretion in admitting the order during closing. *See Service Corp. Int'l. v. Guerra*, 348 S.W.3d 221, 235 (Tex. 2011) (trial court's decision to admit evidence is reviewed for an abuse of discretion); *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005) (same). We now determine whether the evidence is factually sufficient to support the trial court's finding that Kathy failed to complete the service plan.

Parental rights may be terminated only upon proof of clear and convincing evidence that the parent has committed an act prohibited by section 161.001(1) of the Texas Family Code, and that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(1), (2). When a parent challenges the legal sufficiency of the evidence on appeal, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). When factual sufficiency of the evidence is challenged, "only then is disputed or conflicting evidence under review." *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). In reviewing termination findings for factual sufficiency, we give due deference to the factfinder's findings and do not supplant its judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.,* 96 S.W.3d at 266.

At trial, Marcella Pena testified that she prepared a family service plan for Kathy. The service plan contained twelve tasks that Kathy was required to complete to obtain the return of her children. The Department alleged that Kathy failed to comply with the following requirements:

1. to refrain from illegal drug use; complete a drug assessment, and follow through with any recommendations, including drug treatment;
2. to financially provide for the children by obtaining and maintaining stable and appropriate employment;
3. to follow through with recommendations by service providers;
4. to participate in individual therapy at the McCullough Center;
5. to participate in parenting classes through the Brighton Center;
6. to obtain and maintain appropriate housing; and
7. to participate in violence intervention prevention classes at the Battered Women's and Children's Center.

Kathy testified that she attempted to comply with the plan, but admitted that she had not completed the parenting and domestic violence classes. She also admitted smoking marijuana in May 2011. Kathy further testified that she was currently living with her mother, although she had plans to move into her own apartment shortly after trial.

In addition, Marcella Pena testified that Kathy failed to complete both the drug treatment and the domestic violence classes. Pena stated that the only requirements Kathy completed were the psychological evaluation and the empowerment classes. Michelle Castro, Kathy's current caseworker, stated that Kathy completed the drug assessment shortly before trial and that out-patient drug treatment was recommended.

Although it is apparent that Kathy attempted to complete most of the service plan's requirements and that she wanted to be reunited with her sons, we conclude that the trial court could have formed a firm belief or conviction that Kathy violated section 161.001(1)(O). *See In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *In re K.R.M.*, 147 S.W.3d 628, 630 (Tex. App.—San Antonio 2004, no pet.). Therefore, the evidence is factually sufficient to support the trial court's finding that Kathy committed one of the statutory grounds for involuntary termination under section 161.001(1). *See* TEX. FAM. CODE ANN. § 161.001(1); *In re J.F.C.*, 96 S.W.3d at 266. Accordingly, we overrule Kathy's first three issues on appeal.

### *Evidentiary Objections*

Kathy next argues the trial court erred in admitting evidence of her alleged drug use. During trial, Kathy's probation officer, Norma Saenz, was asked whether she ever tested Kathy for drugs. Saenz answered that she had not, but that she had copies of Kathy's drug tests from CPS. Saenz did not indicate what the results of the drug tests were. On re-direct, the Department asked Saenz what the results of the drug tests were between the months of May 2010

and January 2011. Kathy immediately objected on hearsay grounds, and the trial court overruled the objection. Saenz answered that Kathy tested positive for marijuana and benzodiazepine on July 20, 2010 and positive for marijuana and paroxetine on May 27, 2010.

Assuming the trial court abused its discretion in admitting the evidence of the drug tests, we conclude Saenz's testimony was harmless. *See* TEX. R. APP. P. 44.1(a)(1) (judgment may not be reversed unless error probably caused the rendition of an improper judgment). The evidence of the drug test results was cumulative given that there was other testimony that Kathy had used drugs, including Kathy's own admission that she had smoked marijuana and overdosed on Vicodin and Xanax[2] during the pendency of the suit. When the exclusion or admission of evidence is cumulative of other evidence, any error in its admission is harmless. *See State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009). Thus, we overrule Kathy's fourth issue on appeal.

Kathy additionally complains that Saenz's testimony was irrelevant because the Department sought to terminate her parental rights under section 161.001(1)(O) (failure to complete court-ordered service plan) and 161.001(1)(P) (use of controlled substance), and therefore any failure to comply with the terms of her probation was irrelevant and only served to classify her as an unfit parent. The trial court overruled Kathy's objection to the testimony and allowed the testimony on the question of best interest. Although there was no provision in the family service plan requiring Kathy to successfully comply with the terms of her probation, we agree that Saenz's testimony was relevant as to the issue of the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(2); *see also In re J.J.C.*, 302 S.W.3d 436, 447-48 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (trial court may consider any relevant information when determining best interest of child). Kathy's fifth issue is overruled.

---

[2] Kathy testified that she had a physician's prescription for Vicodin and Xanax.

*Best Interest*

Lastly, Kathy challenges the trial court's finding that termination was in the best interest of the children, arguing that there was no evidence, or at least insufficient evidence, to support the finding. A trial court possesses wide discretion in determining the best interests of a child. *Villasenor v. Villasenor*, 911 S.W.2d 411, 419 (Tex. App.—San Antonio 1995, no writ). "There are several factors that should be taken into account when determining whether termination of parental rights is in the best interest of the child." *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). These include the statutory factors set forth in section 263.307 of the Family Code[3] that are relevant in the particular case, and the non-exhaustive list of factors described by the supreme court in *Holley v. Adams. Id.* (citing TEX. FAM. CODE ANN. § 263.307 (West 2008); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976)); *In re C.R.*, 263 S.W.3d 368, 375 (Tex. App.—Dallas 2008, no pet.). The trial court may also consider any other relevant information in determining the best interest of a child. *See In re J.J.C.*, 302 S.W.3d at 447-48.

In *Holley*, the supreme court included nine factors that could be considered in a best interest determination:

> (1) the child's desires;
> (2) the emotional and physical needs of the child, now and in the future;

---

[3] These factors include: (1) a child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after an initial report and intervention; (5) whether the child is afraid to return home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; testing or evaluations of the child and parents; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm had been identified; (10) the willingness of the child's family to seek out, accept, and complete counseling and cooperate with supervising agencies; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable time; (12) whether the child's family demonstrates adequate parenting skills, including providing the child with adequate health and nutritional care, care and nurture consistent with the children's development, guidance and supervision for the child's safety, a safe physical home environment, protection for exposure to violence even if not directed at the child, and an understanding of the child's needs and capabilities; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. TEX. FAM. CODE ANN. § 263.307(b) (West 2008).

(3) the emotional and physical danger to the child now and in the future;
(4) the parental abilities of those seeking custody;
(5) the programs available to assist individuals seeking custody to promote the child's best interest;
(6) the plans for the child by the individuals or agency seeking custody;
(7) the stability of the home or proposed placement;
(8) the acts or omissions of the parents, which may indicate the existing parent-child relationship is not a proper one; and
(9) any excuse for the parent's acts or omissions.

*Holley*, 544 S.W.2d at 371-72. Though nine factors are listed, no single factor controls, and the trier of fact need not consider all of them. *Id.* at 372. "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d at 27. And, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the child's best interest. *Id.* Although the focus of the *Holley* factors is on the best interest of the child and not the best interest of the parent, courts should nevertheless indulge the strong presumption that the child's best interests will be served by preserving the parent-child relationship. *See In re R.R.*, 209 S.W.3d at 116.

In examining the *Holley* factors, we note the following testimony. Emily Winfield, a Department investigator, testified that she prepared the affidavit used to remove the children from the home in May 2010. The affidavit related that the children had witnessed domestic violence between Kathy and her paramour, Matthew White, and specified an altercation involving a frying pan and a knife. Kathy subsequently told the Department that she was no longer involved with White, but when Winfield visited Kathy's home for a follow up, White answered the door.

Sherry Mullen is a psychotherapist who treated Kathy in July 2011; Kathy saw Mullen for two visits and did not attend any further appointments. Kathy came to Mullen three days

before a court hearing after she had been discharged from the hospital for an overdose. Mullen stated that Kathy had previously been diagnosed as bipolar and schizophrenic. Based on Kathy's chronic mental illness and her non-compliance with treatment, Mullen was inclined to say that Kathy's parental rights should be terminated, but she was "not sure" due to her limited interaction with Kathy.

Marie Martin-Joseph testified that she saw Kathy for five therapy sessions in July 2010-September 2010. Martin-Joseph learned through a fellow therapist that Matthew White said he and Kathy still smoked marijuana and fought. When Martin-Joseph confronted Kathy with this information, Kathy was both in denial and angry. Martin-Joseph stated that Kathy's behavior is explosive and that she needs substance abuse treatment. Martin-Joseph did not state an opinion as to termination of Kathy's parental rights.

Norma Saenz, Kathy's probation officer, testified that Kathy was currently serving a six-year term of probation for burglary of a habitation that she committed on July 12, 2010. While Kathy had completed some of the requirements to successfully complete probation, Saenz felt that Kathy should have completed more of the requirements by this time.

Michelle Castro, Kathy's current Department caseworker, stated that Kathy has a good relationship with her children, but that they see her more as a friend than as their mother. Castro expressed no opinion as to whether Kathy's parental rights should be terminated.

Marcella Pena, Kathy's first Department caseworker, testified that she observed Kathy's visits with the boys to be chaotic and somewhat inappropriate. Kathy often invited the boys to family events that she knew they would be unable to attend. Pena felt that termination was in the boys' best interest because, in her opinion, Kathy was unable to provide a safe home environment and continued to engage in violent relationships and was aggressive and hostile.

The fact that Kathy committed a crime during the pendency of the case demonstrated to Pena that Kathy had not dealt with her mental health issues, and this opinion was bolstered by the fact that Kathy was inconsistent in attending therapy sessions. Pena admitted that the Department had been seeking termination, and not reunification, since at least November 2010.

Natalie Lizarralde, a case manager for Bexar County Detention Ministries and Family Renewal Center, testified that Kathy completed the MATCH ("mamas and their children") program which contained core classes in character development, chemical addition, and anger awareness. Lizarralde stated that Kathy was adamant about doing what she needed to do to get her children back. Lizarralde had no concerns about the safety and well-being of the children in Kathy's care, and stated that, in her opinion, Kathy does not pose a danger to the children.

Cathleen Rodriguez, the boys' foster mother, testified that the boys told her they would like to stay with her. There was testimony from the Department that the boys' current placement was non-foster-adopt, and that the goal for the boys' placement was non-family adoption.

Kathy testified that she was no longer in a relationship with Matthew White and that she was employed full-time and was about to move into her own apartment.

In addition, both boys were interviewed by the trial court and asked whether they wanted to return home to live with their mother. D.J.H., who was 13 years old, stated that he wanted to go back with his mother, but that he was satisfied living with his foster family because he gets along well with his classmates. D.A.H., who was 8 years old, stated that he liked living with his foster family, but that he wanted to return home to his mother.

While some of this evidence was favorable to Kathy, we conclude there was both legally and factually sufficient evidence to support the trial court's determination that termination was in the best interest of the children. Given Kathy's recent drug overdose and her failure to complete

the tasks needed to obtain the return of her children during the one and a half years that the case was pending—most notably her failure to attend domestic violence classes and complete substance abuse treatment—the trial court could have reasonably believed that the children would continue to be subjected to a home environment in which drug use and domestic violence were present. Considering the evidence in this record, the trial court could have formed a firm belief or conviction that terminating Kathy's parental rights was in the best interest of D.J.H. and D.A.H. *See In re J.F.C.*, 96 S.W.3d at 266; *In re C.H.*, 89 S.W.3d at 25, 28. As such, Kathy's sixth issue is overruled, and the judgment of the trial court is affirmed.

Phylis J. Speedlin, Justice