

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00893-CV

**IN THE INTEREST OF M.C.** and T.C.

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-PA-00142
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  June 10, 2015

AFFIRMED

Appellant Maurice C. appeals the trial court's termination of his parental rights to his children, eight-year-old M.C. and five-year-old T.C.[1] After a bench trial, the trial court found by clear and convincing evidence that Maurice C. had (1) knowingly placed or knowingly allowed his children to remain in conditions or surroundings that endangered their physical or emotional well-being (section 161.001(1)(D) grounds); (2) failed to comply with the provisions of a court order that specifically established the actions necessary for Maurice C. to obtain the return of his children who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal

---

[1] To protect the privacy of the parties in this case, we identify the children by their initials and the parents by their first names only. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014).

from the parent under Chapter 262 for the abuse or neglect of the children (section 161.001(1)(O) grounds); and (3) constructively abandoned his children who had been in the permanent or temporary managing conservatorship of the Department for not less than six months and the Department made reasonable efforts to return the children to Maurice C. (section 161.001(N) grounds). The trial court also found by clear and convincing evidence that termination of Maurice C.'s parental rights was in the children's best interest. On appeal, Maurice C. argues the evidence is legally and factually insufficient to support the above findings by the trial court. He also argues that the trial court erroneously admitted, over his objection, hearsay testimony.

## THE TRIAL

Maurice C. did not appear at trial. His court-appointed attorney stated at the beginning of trial that he had not had contact with Maurice C. since he had moved to Houston. His attorney announced "not ready" and requested a continuance. The Department responded that the case had been pending for ten months and asked the court to proceed to trial. The trial court denied the motion for continuance and trial proceeded.

The Department called as its only witness Jennifer Iruegas, the Department case worker assigned to the case. Iruegas testified that the children were currently residing with their maternal grandparents and had been doing so since the case began. According to Iruegas, the children were doing well with their grandparents and had developed an attachment to them. She testified it would be harmful for the children to be removed from their current placement and that the plan is for this current placement to lead to permanency. When asked about the events leading to the children's removal from their parents, Iruegas began her answer when Maurice C.'s attorney objected:

Iruegas:    Yes, ma'am. We received a referral – the Department received a referral in November of 2013 alleging neglectful supervision of the children. The parents were allegedly using drugs and at one point –

Maurice C.'s attorney: Judge, I'm going to object as to hearsay unless this caseworker was present and is aware personally of the use of drugs. That's, again, hearsay and I just objected.[2]

Court: Overruled. She's charged with familiarizing herself with the knowledge of the contents of the file and the circumstances that led to CPS intervention. Go.

Iruegas: And at one point the mother did become intoxicated with alcohol and Xanax and began to – well, proceeded to slit – attempt to slit her own throat with a knife in front of her children telling them good-bye and she's tired of being in the world.

Iruegas then testified that when this incident occurred, (1) the mother and Maurice C. had been living together; (2) a safety plan was already in place; (3) Maurice C. was not present, and under the safety plan, he was not supposed to leave the mother unsupervised with the children; and (4) Maurice C. was aware of the mother's mental issues. Iruegas testified that a service plan was created for both parents, and neither had completed their respective service plan. According to Iruegas, both children are "in trauma-informed therapy because of the incident that occurred with their mother inflicting harm to herself in front of them." Iruegas testified that the incident with their mother had left the children with emotional scars. Iruegas then testified that terminating the parental rights of both parents was in the children's best interest.

Iruegas also testified that the parents visited their children about fifteen times during the ten months the case had been pending and had stopped their visits in September 2014, three months before trial. Iruegas testified that the parents had done "nothing" to demonstrate that they can provide the children with a safe and stable home. According to Iruegas, Maurice C. had been living in Houston since October 2014. Iruegas testified that she had spoken with Maurice C. in October 2014 and reminded him of the trial date. She told him that he needed to continue his services in

---

[2] This is the only objection made by Maurice C.'s attorney during Iruegas's testimony. Maurice C.'s attorney did not request a running objection.

order to be able to work toward reunification with his children. She asked him if he intended to continue his services. According to Iruegas, Maurice C. "was angry and he was – it seemed like he had lost hope and claimed that it didn't matter if he did his services or not." Maurice C. told Iruegas that he had recently lost his job and was looking for a new one. Iruegas also testified that Maurice C. was "unsuccessfully discharged from individual counseling for noncompliance and he did not maintain employment." Maurice C. missed several counseling sessions, and according to Iruegas, with regard to Maurice C.'s therapy "[t]here was concern [about] his lack of planning and his lack of ability to care and ensure the safety of his children and not leave them alone with [the mother]." Iruegas testified that Maurice C. had on at least one occasion left the children alone with their mother while he went to work. Iruegas testified that the mother was currently homeless and in September 2014 had been at the psychiatric unit at University Hospital. The mother had become intoxicated and harmed herself, at which time she called the crisis hotline and was taken to University Hospital. The mother had left a voice message with the Department, and according to Iruegas, the mother's message was "completely incoherent" and the mother "was obviously intoxicated by something." According to Iruegas, the mother had been hospitalized twice during the pendency of the case.

Iruegas was asked if Maurice C.'s rights should be terminated because the mother has a mental illness. Iruegas responded, "Along with his inability to care for – to ensure safety for his children, yes." Iruegas testified that in the pre-litigation family-based case, Maurice C. was informed that he could not leave his children alone with the mother because of her mental health problems:

> Q:      Was it the family-based case that ultimately resulted in this case and that Dad violated?
>
> A:      Yes.

Q:     Was it highlighted to the Dad in the family-based case that the reason he shouldn't leave his kids alone with the Mom was because of her mental health problems?

A:     Yes.

Q:     And he violated that?

A:     Yes, ma'am.

When asked what Maurice C. had done to demonstrate that he would not make such a bad decision again, Iruegas replied, "Nothing."

## HEARSAY

Maurice C. argues the trial court erred in overruling his hearsay objection to Iruegas's testimony that the Department received a referral in November 2013 alleging neglectful supervision of the children because the parents were using drugs and at one point, the mother became intoxicated with alcohol and Xanax and attempted to slit her throat with a knife in front of her children. We review the admission of evidence for abuse of discretion. *See Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 638 (Tex. 2009).

Whether or not this testimony was inadmissible hearsay, any error is harmless because Maurice C. did not continue to object to Iruegas's testimony or request a running objection. To obtain the reversal of a judgment based upon an error of the trial court in admission or exclusion of evidence, it must be shown that the trial court did in fact commit error and that the error complained of probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case to the court of appeals. *See* TEX. R. APP. P. 44.1(a); *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009). Any error in excluding evidence is harmless if other admitted evidence reveals the same facts as that which is excluded. *Bryant v. Transcon. Gas Pipe Line Corp.*, 821 S.W.2d 187, 188 (Tex. App.—Houston [14th Dist.] 1991, writ denied); *see Cent. Expressway*, 302 S.W.3d at 870 ("[T]he exclusion or admission is

likely harmless if the evidence was cumulative, or the rest of the evidence was so one-sided that the error likely made no difference in the judgment."). After Maurice C. objected to Iruegas's testimony, Iruegas gave similar testimony without objection. Therefore, any error was harmless.

## SUFFICIENCY OF THE EVIDENCE

Parental rights may be terminated only upon proof of clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(1) of the Texas Family Code, and (2) termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001 (West 2014). Here, the trial court found three grounds supporting termination of Maurice C.'s parental rights under section 161.001(1). Maurice C. argues there is legally and factually insufficient evidence to support all three grounds.

When the legal sufficiency of the evidence is challenged, we look at all the evidence in the light most favorable to the trial court's finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* (citations omitted). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (citations omitted). "If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient." *Id.* at 344-45 (citations omitted).

When a parent challenges the factual sufficiency of the evidence on appeal, we look at all the evidence, including disputed or conflicting evidence. *Id.* at 345. "If, in light of the entire record,

the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (citations omitted). In reviewing termination findings for factual sufficiency, we give due deference to the factfinder's findings and do not supplant its judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

With regard to the trial court's finding pursuant to section 161.001(1)(O), Maurice C. argues the evidence is legally and factually insufficient to support the trial court's finding that he failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of his children who had been in the Department's permanent or temporary managing conservatorship for not less than nine months as a result of the children's removal under Chapter 262 for abuse or neglect. At trial, the trial court took judicial notice of the service plan. The service plan required that Maurice C. complete parenting classes, have a drug assessment with drug treatment, complete a psychological evaluation, complete individual counseling, and maintain housing and employment. Maurice C. completed parenting classes, and his drug and psychological assessment. However, he was unsuccessfully discharged from individual counseling for non-compliance because he missed several sessions. According to Iruegas, as a result of the sessions Maurice C. did attend, the therapist was concerned about "his lack of planning and his lack of ability to care and ensure the safety of his children and not leave them alone with [the mother]." Iruegas also testified that he failed to maintain steady employment. He was employed on-and-off during the ten-month pendency of the case. When she talked to him in October, he had lost his job, had moved to Houston, and was looking for a new job.

Maurice C. complains that Iruegas did not testify that she made all the referrals and authorizations necessary for him to participate in services or give any examples of her efforts to reunite him with his children. However, Iruegas did testify that the Department had made

reasonable efforts to work with both parents. She testified that she "reached out to [Maurice C.] several times and on one occasion he did answer the phone." She reminded him of the court dates and told him that he would need to continue with his services in order to work towards reunification with his children. According to Iruegas, Maurice C. was angry and frustrated, stating that he did not believe it mattered if he continued his services. Iruegas testified that she provided Maurice C. with information and the proper authorization to participate in the services. We hold the evidence is legally and factually sufficient to support the trial court's finding pursuant to section 161.001(1)(O).

With regard to the trial court's finding pursuant to section 161.001(1)(D), Maurice C. argues the evidence is legally and factually insufficient that he knowingly placed or knowingly allowed his children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children. *See* TEX. FAM. CODE ANN. § 161.001(1)(D) (West 2014). Subsection D permits termination based on a single act or omission by the parent. *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied).

The term "endanger" means "to expose to loss or injury." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re J.J.B.*, No. 04-14-00299-CV, 2014 WL 4218845, at *2 (Tex. App.—San Antonio Aug. 27, 2014, no pet.). Although "'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Boyd*, 727 S.W.2d at 533; *see In re J.J.B.*, 2014 WL 4218845, at *2 (explaining that "abusive or violent conduct by a parent or other resident of a child's home can constitute a condition that endangers the child's physical or emotional well-being within the meaning of section 161.001(1)(D)). "Although the parent need not have certain knowledge that an actual injury is occurring, the parent must at least be aware of the potential for danger to the child in such an

environment and must have disregarded that risk." *In re A.S.*, 261 S.W.3d 76, 83 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). At trial, Iruegas testified that Maurice C. was aware of the mother's mental health issues and knew that he was not permitted to leave the children alone with the mother pursuant to the Family Based Safety Plan.[3] He nevertheless left the children alone with the mother. Iruegas testified that the children then witnessed their mother inflict harm upon herself, resulting in the children suffering from "lasting emotional scars" and undergoing trauma-informed therapy. Thus, there was testimony that Maurice C. knew about the danger posed to his children by their mother's mental health problems, was specifically told by the Department that he could not leave the children alone with her, and nonetheless did so. We conclude the evidence is legally and factually sufficient to support termination of Maurice C.'s parental rights on section 161.001(1)(D) grounds.[4]

Maurice C. also argues the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights is in his children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(2) (West 2014). There is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, there is also a presumption that when the court considers factors related to the best interest of the child, "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a) (West 2014). And, in determining whether the child's parents are willing and able to provide the child with a safe environment, the court should consider the following: the child's age and physical and mental

---

[3] This safety plan was in place prior to the children's removal and is different from the service plan referred to previously.

[4] Because only one ground under section 161.001(1) can support the termination of parental rights and because we have determined that sufficient evidence supported two different grounds under section 161.001(1), we need not determine whether there is sufficient evidence that Maurice C. constructively abandoned his children under section 161.001(1)(N).

vulnerabilities; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; and whether the child's family demonstrates adequate parenting skills, including providing the child with minimally adequate health and nutritional care, a safe physical home environment, and an understanding of the child's needs and capabilities. *Id.* § 263.307(b). In addition, courts may consider other nonexclusive factors in reviewing the sufficiency of the evidence to support the best interest finding, including (1) the desires of the child, (2) the present and future physical and emotional needs of the child, (3) the present and future emotional and physical danger to the child, (4) the parental abilities of the persons seeking custody, (5) the programs available to assist those persons seeking custody in promoting the best interest of the child, (6) the plans for the child by the individuals or agency seeking custody, (7) the stability of the home or proposed placement, (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate, and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). This list is not exhaustive, and evidence is not required on all of the factors to support a finding terminating a parent's rights. *Id.*; *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

At trial, there was evidence that Maurice C.'s young children had been living with their maternal grandparents for the previous ten months, were doing well, and had formed an attachment that continues to grow. Iruegas testified that it would be harmful for the children to be removed from their maternal grandparents and that the plan was for their current placement to lead to permanency. Iruegas also testified that Maurice C. failed to maintain stable employment, and in the final months before trial, Maurice C. stopped all communication with both his children and the Department. He stopped visiting his children. He was not able to show that he had stable housing.

Maurice C. also failed to complete individual counseling. Meanwhile, his very young children are currently undergoing trauma therapy. We hold there is legally and factually sufficient evidence that termination of Maurice C.'s parental rights is in the children's best interest.

We affirm the trial court's order terminating Maurice C.'s parental rights.

Karen Angelini, Justice