# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

NO. 03-24-00068-CV

---

**T. C. and X. M., Appellants**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY**
**NO. 23-0010-CPSC1, THE HONORABLE BRANDY HALLFORD, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

T.C. (Mother) and X.M. (Father) appeal from the trial court's order terminating their parental rights to their child (Child) following a jury trial.[1]  The jury found by clear and convincing evidence that statutory grounds for terminating their parental rights existed and that termination was in Child's best interest.  *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (O), (2). For the following reasons, we affirm the trial court's order of termination.

---

[1] We refer to the parents, their child, and other family by their initials or their relation to Child.  *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8.

## BACKGROUND[2]

In January 2023, the Texas Department of Family and Protective Services filed an original petition for protection of Child, for conservatorship, and for termination in a suit affecting the parent-child relationship and sought emergency removal of Child from Mother and Father. Mother, Father, and seven-week-old Child were living in a hotel, and Mother and Father were Child's sole caregivers. After seeing Child's "legs go limp," Mother delayed taking Child to the doctor for several days. When she did take him to the doctor, the doctor told Mother to take Child to the hospital right away. At the hospital, Child was found to have over forty discrete injuries at different stages of healing, including a lacerated liver, skull fracture, and bone fractures all over his body. Among the treatments that he received, an "NG Tube" was placed through Child's nose to feed him,[3] and he required a blood transfusion.

The trial court granted the Department's request for emergency removal and appointed the Department as the temporary managing conservator of Child. In the middle of February, Child was released from the hospital and placed with the attorney ad litem's legal assistant, who had been visiting Child in the hospital, had connected and bonded with Child, and had received training for how to feed Child through the NG Tube.[4] Around that time, the trial court substituted a different attorney as Child's attorney ad litem.

---

[2] Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we do not recite them in the opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1.

[3] A pediatrician testified that an "NG Tube" is a "nasogastric tube," "a feeding tube that goes through the nose and into the stomach."

[4] During Child's hospitalization and after the emergency removal, no family visited Child or received training as to the NG Tube.

2

During the case, both parents were subject to court-ordered family service plans and pending criminal charges stemming from Child's injuries. Father did not comply with his plan and remained incarcerated on the pending charge of injury to a child. Mother took steps to comply with her plan and was released from incarceration after posting bond as to the charge of injury to a child by omission, but she was arrested on a different charge—criminal mischief—and incarcerated until that charge was dismissed.[5] Neither parent was allowed to visit with Child after the Department was appointed temporary managing conservator, and Child remained in the same placement. A home study had been done on Mother's sister and her husband, and after they informed the Department that they did not want to be considered as the primary placement but a possible back-up placement, a home study was done on Mother's father (Grandfather) and his partner. The home studies were approved pending training as to the NG Tube, but at the time of trial, the Department had been unable to set up the necessary training.

Trial occurred in January 2024. The trial court granted in part the attorneys ad litem's[6] motion in limine as to "[a]ny attempt to elicit testimony regarding where permanent placement should be." The trial court ordered that "[t]he parties may elicit testimony regarding possible placement(s) options for the child as it applies to the best interest of the child and not to conservatorship determination." The trial court also granted the motion in limine as to "any mention or request to change Child's placement" or "any references to any statements or opinions that [Child] was wrongfully placed with current placement." The trial court ordered that regarding any request to change Child's placement, "the parties may elicit testimony

---

[5] The evidence at trial showed that Mother was arrested for criminal mischief after she intentionally rammed or hit her vehicle into another vehicle three times. Mother testified at trial that this charge had been dismissed.

[6] By the time of trial, the trial court had appointed two attorneys to represent Child.

regarding possible placement(s) options for [Child] as it applies to the best interest of [Child] and not to [the] conservatorship determination." The trial court further granted in part the motion in limine as to "[c]onduct or statements that indicate [Child's] family being a better placement." The trial court ordered that "[t]he parties may elicit testimony regarding possible placement(s) options for [Child] as it applies to the best interest of [Child] and not to [the] conservatorship determination."

The Department's witnesses at trial included detectives from the Austin Police Department who investigated Child's injuries; Department investigators, caseworkers, and supervisors involved with Child; a child abuse pediatrician who examined Child when he was in the hospital, testified about Child's injuries[7] and the hospital's treatment of those injuries, and opined that Child had been abused; a Court Appointed Special Advocate (CASA) volunteer; Mother's therapist; Mother; and Father. The Department's employees and the CASA volunteer testified consistently that termination of parental rights was in Child's best interest. If the parental rights were terminated, the Department's plan for Child was placement with and relative adoption by Grandfather and his partner.

The evidence established that Mother and Father were Child's sole caregivers when Child was injured; that they delayed seeking medical care for Child after he was injured; that against court order they continued to communicate with each other during the case; that the criminal charges arising from Child's injuries against Mother and Father remained pending; and that Mother had been arrested and incarcerated during the case after she intentionally rammed or

---

[7] The pediatrician testified that Child's injuries included a skull fracture; swelling in his neck tissues; bruising; "a liver laceration"; "nine broken ribs on the right side and seven on the left"; fractures of "his left radius and ulna," "his right scapula," "both of his femurs," "one of the bones in his pelvis," and "his left and right distal tibia and fibula"; and "several fractures in his feet on both sides."

4

hit her vehicle into another vehicle multiple times. As to the cause of Child's injuries, Father testified about his actions that might have caused Child's injuries and Mother's presence when he took those actions.[8] Mother testified that she did not know Child was injured before taking him to the doctor. Neither parent was asking for Child to come home with them but requested that he be placed with family. Mother also testified that if her rights were not terminated, she would accept limited access to Child and that some type of relationship between her and Child, even if limited, was in Child's best interest.

Mother's witnesses were a CASA supervisor, family members including Grandfather and his partner, and a friend. Grandfather and his partner testified about their efforts to obtain the training as to the NG Tube and their willingness and ability to care for Child and to put his needs first. Grandfather and his partner also testified that if Mother's rights were not terminated and the court limited Mother's contact with Child, they would abide by the court's order if they were Child's placement.

Relevant to Mother's appeal, in a bench conference during the testimony of the Department's supervisor assigned to Child in February, Mother's attorney advised the trial court that he "wanted to ask this witness potentially about options as conservatorship options for family," but the trial court responded "[t]hat would be going outside" the motion in limine order. In a subsequent bench conference, Mother's attorney asked the trial court if he could "talk about my client being named as a possessory conservator," and the trial court responded, "You can talk about best interest, about likely outcomes if there is termination" and "what the possible

---

[8] When asked if he recklessly caused injury to Child, Father answered, "Not intentionally, but I guess recklessly." He also answered, "Yeah, I guess so," when asked if Mother was present in the room when he was doing "all these reckless actions to this [seven]-week-old child."

outcomes are if the jury does not terminate" but "we're not going to talk about conservatorship." In response to the trial court's ruling, Mother's attorney made an offer of proof outside the presence of the jury by providing the substance of expected testimony from Mother, Grandfather, and the CASA supervisor and in question-and-answer form from the Department supervisor and the CASA supervisor.

The jury found by clear and convincing evidence that the parents had knowingly placed or knowingly allowed Child to remain in conditions or surroundings which endangered Child's physical or emotional well-being, that they had engaged in conduct or knowingly placed Child with persons who engaged in conduct which endangered Child's physical or emotional well-being, that they had failed to comply with the court-ordered service plans, and that termination of the parent-child relationship was in Child's best interest. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (O), (2). In accordance with the jury's verdict, the trial court signed the order terminating the parents' rights to Child and appointing the Department as Child's managing conservator. *See id.* § 161.207 (requiring court to appoint "suitable, competent adult"; the Department; or licensed child-placing agency as managing conservator of child when court terminates parent-child relationship with respect to both parents). The parents' appeals followed.

## ANALYSIS

### Father's Appeal

On appeal, Father's court-appointed attorney has filed a brief concluding that his appeal is frivolous and without merit. *See Anders v. California*, 386 U.S. 738, 744 (1967); *Taylor v. Texas Dep't of Protective & Regul. Servs.*, 160 S.W.3d 641, 646–47 (Tex. App.—Austin 2005, pet. denied) (applying *Anders* procedure in appeal from termination of parental

6

rights). The brief meets the requirements of *Anders* by presenting a professional evaluation of the record demonstrating why there are no arguable grounds to be advanced on appeal. *See* 386 U.S. at 744; *Taylor*, 160 S.W.3d at 646–47. Father's attorney has certified to this Court that he provided a copy of the *Anders* brief to Father and informed him of his right to examine the appellate record and to file a pro se brief. To date, Father has not filed a pro se brief.

Upon receiving an *Anders* brief, we must conduct a full examination of the proceedings to determine whether the appeal is wholly frivolous. *Penson v. Ohio*, 488 U.S. 75, 80 (1988). We have reviewed the entire record, including the *Anders* brief submitted on Father's behalf, and have found nothing that would arguably support an appeal. Our review included the evidence to support the jury's endangerment findings, *see* Tex. Fam. Code § 161.001(b)(1)(D), (E), and we have found no issues that could be raised on appeal with respect to these findings, *see In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019). We agree that Father's appeal is frivolous and without merit.

**Mother's Appeal**

In her sole appellate issue, Mother argues that the trial court abused its discretion by excluding evidence concerning conservatorship and that this abuse of discretion resulted in harm to Mother and an incorrect judgment.

*Standard of Review*

"We review a trial court's decision to admit or exclude evidence for an abuse of discretion." *A.B. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-17-00658-CV, 2018 Tex. App. LEXIS 1790, at *7 (Tex. App.—Austin Mar. 9, 2018, no pet.) (mem. op.) (quoting *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005)). "A trial court abuses its discretion when it acts in an

arbitrary or unreasonable manner 'without reference to any guiding rules and principles.'" *Id.* (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)); *accord J.A.B. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-13-00273-CV, 2013 Tex. App. LEXIS 10110, at \*3–4 (Tex. App.—Austin Aug. 14, 2013, pet. denied) (mem. op.).

Further, when the trial court abuses its discretion by excluding evidence, the complaining party also must show that this exclusion was harmful. *See* Tex. R. App. P. 44.1(a). Evidentiary error requires reversal when it "probably caused the rendition of an improper judgment." *Id.* R. 44.1(a)(1). In deciding whether an evidentiary error was harmful, we "review the entire record." *B.S. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00279-CV, 2022 Tex. App. LEXIS 8324, at \*12 (Tex. App.—Austin Nov. 10, 2022, no pet.) (mem. op.) (citing *In re E.A.G.*, 373 S.W.3d 129, 145 (Tex. App.—San Antonio 2012, pet. denied)); *see Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 883 (Tex. 2014) (describing appellate court's analysis in determining whether trial court's error was harmful). To support reversal based on evidentiary error, a complaining party generally must show that the judgment turns on the excluded evidence. *Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000) (citing *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995)).

*Trial Court's Exclusion of Evidence and Mother's Offer of Proof*

The trial court's order granting the attorneys ad litem's motion in limine prohibited the parties from eliciting testimony regarding where permanent placement should be without first approaching the bench and ordered that "[t]he parties may elicit testimony regarding possible placement(s) options for the child as it applies to the best interest of the child and not to conservatorship determination." During trial, the court ruled consistently with its order on the

8

motion in limine. In the bench conferences, when asked by Mother's attorney if he could "talk about [Mother] being named as a possessory conservator," the trial court responded, "You can talk about best interest, about likely outcomes if there is termination" and "what the possible outcomes are if the jury does not terminate," but the trial court explained to Mother's attorney that he was not allowed to ask about possessory conservatorship.

Mother's offer of proof was through her attorney's informing the trial court of the substance of testimony he would have elicited from Mother, Grandfather, and the CASA supervisor and in question-and-answer form from the Department supervisor and the CASA supervisor. *See* Tex. R. Evid. 103(c) (allowing offer of proof in question-and-answer form). Mother's attorney informed the trial court that he would have asked Mother:

> if conservatorship issues were going to go to the jury, whether she potentially would ask for possessory conservatorship as opposed to being named as managing conservator or joint managing conservator. And potentially, if family managing conservatorship was on the table, ask if she would like for [Grandfather] to be named as managing conservator. And I believe her answers to those would be, yes, those are potential options that she would like the jury to know about.

The attorney also informed the trial court that he would have asked similar questions of Grandfather and the CASA supervisor.[9]

As to the question-and-answer part of the offer of proof, in response to questions from Mother's attorney, the Department supervisor agreed that it was possible and that it happened frequently that a family member is appointed as the managing conservator of a child and that in those situations, a parent can be named a possessory conservator with limited visits or

---

[9] Mother's attorney also informed the trial court about the expected substance of the CASA supervisor's answers to questions about Child's current placement, but Mother does not rely on the substance of that testimony on appeal, and it is not relevant to our resolution of Mother's issue on appeal.

no contact or only supervised visits. The supervisor also agreed that sometimes in those situations, the parent also can continue to work services to alleviate concerns about their ability to be safe with their child.

Concerning Child's particular circumstances, the supervisor testified in the offer of proof:

> Q. In this case, why is it not appropriate for, say, a family member like [Grandfather] to be named as a managing conservator and [Mother] to be named as a possessory conservator?
>
> A. In this case, it would all depend on what access the possessor would have.
>
> Q. Okay. So in a situation where—like we talked about, a possessory conservator—their visitation or their possession and access is controlled by the judge. You understand that. Right?
>
> A. Yes.
>
> Q. It's not controlled by the jury. You understand that. Right?
>
> A. Yes.
>
> Q. So you said it depends on the access. So if this Court in this situation granted [Mother] either no visitation or only supervised visitation, would that alleviate some of those safety and protective concerns the Department has?
>
> A. Yes.
>
> Q. And that could potentially be—or could be a way to resolve the case if that alleviates those concerns that you would have with [Mother]. Would you agree with that?
>
> A. Correct.

On cross-examination as part of the offer of proof, the supervisor testified that the Department was not in favor of possible alternative conservatorship for either parent and explained why:

10

It is felt that it is in [Child's] best interest that the parents' rights be terminated due to the injuries he sustained and the Department not knowing how those occurred. He is doing well. He is thriving in his environment. He has not had any fractures, any broken bones, any incidents. Although he is in a placement, we feel that, [after] termination, first possible would be to place with family members.

The supervisor also agreed that supervised visitation would alleviate concerns if that "route was ordered at some point in time" and that the Department as the current managing conservator "would make recommendations for visitation and access and all of those matters if it came to it."[10]

*Did the trial court abuse its discretion in excluding evidence of conservatorship?*

Mother argues that the trial court erroneously excluded evidence "concerning conservatorship," specifically that the jury was deprived of "an understanding of what conservatorship entails" and that "a juror that is not provided an understanding of what conservatorship entails cannot properly make a best interest analysis."[11]

The controlling question in this case was whether the parents' rights should be terminated. *See J.A.B.*, 2013 Tex. App. LEXIS 10110, at *4–5 (explaining that controlling question in termination case was whether parent's rights should be terminated). The jury

---

[10] Mother's attorney also questioned the CASA supervisor as part of the offer of proof, but his testimony did not support Mother. The supervisor testified that CASA would not favor the option of naming a family member as managing conservator and Mother as possessory conservator and answered, "No," when asked if he thought there could be "a scenario where Mother could be named as a possessory conservator with limited rights and access."

[11] To the extent that Mother relies on the substance of evidence that was excluded but not raised or elicited in the offer of proof, she has not preserved the issue for our review. *See* Tex. R. Evid. 103 (generally requiring party to inform court of substance of evidence by offer of proof when court's ruling excludes evidence). Thus, our analysis of the excluded evidence is confined to the substance of the evidence that was raised or elicited during Mother's offer of proof.

11

questions concerned the Department's asserted predicate grounds for termination and the best interest of Child, and Mother has not raised an issue asserting charge error. In this context, we cannot conclude that the trial court abused its discretion by limiting the testimony about Child's placement to testimony relevant to the best-interest determination and not allowing further testimony about conservatorship as raised or elicited in the offer of proof. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (stating that relevant factors in assessing best interest of child include stability of proposed placement and plans for child by individual or agency seeking custody); *see also, e.g.*, *J.A.B.*, 2013 Tex. App. LEXIS 10110, at \*4–5 (concluding that trial court "did not abuse its discretion by refusing to submit additional questions concerning conservatorship" because controlling question was whether parent's rights should be terminated).

Further, even if we were to assume without deciding that the trial court erred in excluding the testimony concerning conservatorship as raised or elicited in the offer of proof, we cannot conclude based on our review of the entire record that Mother has shown that the exclusion of this evidence probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1); *B.S.*, 2022 Tex. App. LEXIS 8324, at \*12 (requiring appellate court to review entire record).

Mother has not raised an issue challenging the sufficiency of the evidence to support the jury's endangerment and best-interest findings, and the evidence of endangerment was overwhelming. *See In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (stating that evidence presented to satisfy predicate-ground finding may also be probative of child's best interest); *Pruitt v. Texas Dep't of Fam. & Protective Servs.*, No. 03-10-00089-CV, 2010 Tex. App. LEXIS 10272, at \*22–23 (Tex. App.—Austin Dec. 23, 2010, no pet.) (mem. op.) (explaining that Department need not prove all *Holley* factors, "especially when there is undisputed evidence that

12

the parental relationship endangered the child"); *see also J.T. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-15-00725-CV, 2016 Tex. App. LEXIS 2164, at *9 (Tex. App.—Austin Mar. 2, 2016, no pet.) (mem. op.) (explaining that exclusion of evidence is harmless if "the rest of the evidence was so one-sided that the error likely made no difference in the judgment" (quoting *State v. Central Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009))).  The evidence also showed that during the case, Mother communicated with Father against court order and that she was arrested and incarcerated after she intentionally rammed or hit her vehicle into another vehicle three times.  *See Holley*, 544 S.W.2d at 371–72 (stating relevant factors in best-interest determination to include parental abilities, emotional and physical danger to child in future, and acts by parent showing parent-child relationship was not proper).

The evidence also established that if the parents' rights were terminated, the Department's plan for Child was adoption by Grandfather and his partner; Mother was allowed to testify that she was asking for Child to be placed with Grandfather and his partner and for her rights not to be terminated, which would allow her to have some legal possession and access as ordered by the trial court;[12] Father testified that his preference was for Child to be placed with

---

[12] Mother asked for her rights not to be terminated and for access and possession as determined by the trial court and testified about her desire for Child to be placed with family:

> Q.    … [Y]ou're not asking for reunification today with [Child].  Is that right?
> A.    Correct.
> Q.    You are not asking for [Child] to come home with you today.  Right?
> A.    Correct.
> Q.    Or at the end of this trial.  Correct?
> A.    Correct.  I know that is not feasible.
> Q.    What you are asking for is family to be placement.  Is that correct?
> A.    Yes.
> Q.    And as long as you have some parental rights—whatever possession and access that the judge decides?
> A.    Ask it again.

family and that he had no concerns with Child being placed with Grandfather and his partner; and Grandfather testified that he would abide by the court's order to limit Child's contact with Mother if her rights were not terminated and Child was placed with them. Thus, although Mother was not allowed to present the substance of the evidence concerning conservatorship as raised or elicited in the offer of proof, the jury was presented with evidence concerning the placement and plans for Child if parental rights were terminated or if they were not. *See Able*, 35 S.W.3d at 617 (stating that appellate courts ordinarily will not reverse judgment for erroneous evidentiary ruling "when the evidence in question is cumulative and not controlling on a material issue dispositive to the case"); *see also Holley*, 544 S.W.2d at 371–72 (stating relevant factors in best-interest determination).

For these reasons, we conclude that Mother has not established that the trial court's exclusion of the evidence concerning conservatorship as raised or elicited in the offer of proof was reversible error and, thus, overrule her appellate issue.

## CONCLUSION

Having found that Father's appeal is frivolous and without merit and having overruled Mother's appellate issue, we affirm the trial court's order of termination.[13]

---

Q.    As long as your rights aren't terminated, whatever possession and access the judge decides for you to have?
A.    Yes.

[13] We also deny the pending motion to withdraw by Father's attorney. *See In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016) (per curiam). If Father, after consulting with counsel, desires to file a petition for review, his counsel should timely file with the Texas Supreme Court "a petition for review that satisfies the standards of an *Anders* brief." *See id.* at 27–28.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Smith and Theofanis

Affirmed

Filed:   April 25, 2024